## WALVILLE LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals. Ninth Circuit.
October 21, 1929.

No. 5710.

446

Andrew G. Elder and Joseph Nievinski, both of Seattle, Wash., for petitioner.

Sewall Key and Millar E. McGilchrist, Sp. Assts. to Atty. Gen. (C. M. Charest, General Counsel, and P. S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before DIETRICH and WILBUR, Circuit Judges, and LOUDERBACK, District Judge.

DIETRICH, Circuit Judge. By the Commissioner of Internal Revenue it was held that appellant's income and profits taxes for 1919 were deficient in the sum of $7,514.86. Unsuccessfully the taxpayer sought relief from the Board of Tax Appeals, and from the order dismissing its petition it prosecutes this appeal. See section 1001 of the Revenue Act of 1926 (26 USCA § 1224).

The claimed deficiency is attributable to the refusal of the Commissioner to allow appellant a loss alleged to have been suffered by it on 4,400 shares of the stock it held in the Wallworth & Neville Manufacturing Company, which were liquidated in 1919 upon the dissolution of that company (hereinafter referred to as the Manufacturing Company).

Appellant was incorporated under the laws of Washington in 1908, with an authorized capital of $1,000,000, consisting of 10,000 shares of the par value of $100 each. In consideration for the issuance to various individuals of all of its stock, it acquired in that year from the Manufacturing Company, a Michigan corporation, certain lands, timbered and cut over, a sawmill, a factory, and equipment, and also 4,400 shares of its common stock, all estimated to have been of a value of $1,107,329. At that time the Manufacturing Company had outstanding 8,000 shares of its common stock and 1,000 shares preferred, all of the par value of $100 per share. Appellant never owned any of the preferred stock, but continued to hold the 4,400 shares of common thus acquired up to the time of the dissolution of the Manufacturing Company in 1919. In 1919, the Manufacturing Company, in turn, owned 5,541 shares of the appellant's stock.

In that year without consideration the appellant reduced its capital stock from 10,000 to 5,000 shares, one-half thereof being common and one-half preferred—all of the par value of $100 per share. It would seem that at that time the Manufacturing Company was indebted to the holders of its 1,000 shares preferred stock on account of accumulated but unpaid dividends thereon, and also contemplated dissolution, and by agreement on the part of all concerned, instead of issuing to the Manufacturing Company the 1,385¼ shares of appellant's new, preferred stock, to which it was entitled upon reduction of appellant's capital stock, as already explained, the latter issued these shares to the several holders of the Manufacturing Company's preferred stock in satisfaction of their rights as such holders; and issued the other 1,114¾ shares of its preferred stock to its stockholders other than the Manufacturing Company. In like manner it issued to its own stockholders other than the Manufacturing Company 1,114¾ shares of its new, common stock, but, instead of issuing to the Manufacturing Company the other 1,385¼ shares thereof, to which the latter was entitled, pursuant to the common understanding of all interested parties as already explained, it recognized the holders of the Manufacturing Company's common stock as the beneficiaries and accordingly issued to all such stockholders, except itself, the shares to which they were so entitled, aggregating 629¼ shares, and held unissued the other 756 shares which, if issued, would have come to it as a holder of the 4,400 shares of the Manufacturing Company's common stock. As was the intention of all parties interested, the transaction thus consummated in effect operated to dissolve the Manufacturing Company and to distribute its assets to its stockholders in accordance with their several rights, for its only real asset was the stock it held in the appellant company.

It will thus be seen that as a net result of what was done appellant realized from its 4,400 shares of the Manufacturing Company's stock the value which the 756 shares of its own common stock would have had had they been issued to it or, upon a sale thereof, issued to some third person. And if it be assumed that the rights of the preferred stockholders in the Manufacturing Company were superior to those of its common stockholders and the settlement with them, as

above explained, was honest and fair (and of this appellee makes no question), such value is precisely what appellant would have realized had the Manufacturing Company been formally dissolved and its assets distributed through some appropriate judicial proceeding.

It is now agreed that appellant acquired the 4,400 shares in 1908 at a cost of $440,000, and that on March 1, 1913, they had a fair market value of $225,967.28, and that the 756 shares of its own stock constituting the total net proceeds realized therefrom in 1919 were in that year of a fair market value of $107,197.53.

In its income tax return for 1919, appellant tentatively assumed and reported the value of the 4,400 shares as of March 1, 1913, to be $150,000, and of the 756 shares in 1919 to be $75,600, and accordingly claimed a loss of $74,400. This claim the Commissioner wholly rejected, and hence the controversy. It will be seen that if the two actual values as now agreed upon be adopted, the appellant's loss was $118,769.75 instead of $74,400.

The Commissioner's disallowance was based solely upon the assumption that what was done constituted a "capital transaction" within the meaning of article 862 of Regulations 45[1] and is ruled by Office Decision 479; Cumulative Bulletin III-2, but upon an examination of the regulation and the decision we are unable to perceive its applicability. We are not here concerned with what appellant did with the proceeds of its liquidated investment in the 4,400 shares, but only with the loss it sustained upon such liquidation. Had appellant caused to be issued and sold the 756 shares it realized from the 4,400 shares, or sold to the third person its right to have such shares issued, the re-

sult would have been precisely the same. In any case, what it actually got for its investment in the 4,400 shares, admittedly amounting to $225,967.28 on March 1, 1913, was $107,197.53, and the difference between the two amounts constitutes its actual loss. More analogous than the office decision cited are the following decisions of the Board of Tax Appeals: Behlow Estate Co. v. Commissioner, 12 B. T. A. 1365; Callanan Roal Improvement Co. v. Commissioner, 12 B. T. A. 1109; New Jersey Porcelain Co. v. Commissioner, 15 B. T. A. 1059.

Indeed, the Board apparently did not here share in the Commissioner's view, for in its opinion no reference at all is made to the "capital investment" theory. Its decision rests solely upon the assumption that in the winding up of the affairs of the Manufacturing Company appellant was entitled to receive something more than the 756 shares distributed to it. We say assumption because we have searched the record in vain for evidence tending to support such a finding, and the only testimony we find upon the point is specifically and directly to the contrary.

Accordingly, the order appealed from will be reversed with directions to allow appellant a deductible loss of $118,769.75.

*Rehearing denied December 17, 1929.

---

[1] Article 862 of Regulations 45: "Where a corporation either directly or indirectly, as for example through a trustee, has prior to the taxable year bought its own stock, either for the purpose of retirement or of holding it in the treasury or for other purposes, the entire cost of such stock must be deducted from the aggregate invested capital as of the beginning of the taxable year, if such deduction has not already been made. Where such stock is purchased during the taxable year a deduction from the invested capital as of the beginning of the taxable year and effective from the date of such purchase is required only to the extent that such stock has not been purchased out of the undivided profits of the taxable year. See article 857. The full amount derived in cash or its equivalent from the resale of such stock may be included in the invested capital from the date of such resale, unless such stock had been purchased out of earnings of the taxable year. See article 542."