### SPEAR & CO. v. HEINER, Collector of Internal Revenue.

#### No. 5609.

District Court, W. D. Pennsylvania.

Oct. 21, 1931.

For former opinion, see 34 F.(2d) 795.

E. B. Strassburger, Smith, Shaw, McClay & Seifert, W. A. Seifert, and W. W. Booth, all of Pittsburgh, Pa., for plaintiff.

Louis E. Graham, U. S. Atty., and John A. McCann, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa., for defendant.

### Additional Findings of Fact.

McVICAR, District Judge.

22. Plaintiff, prior to January 1, 1917, was the owner of five furniture stores, two in the city of New York, two in Pittsburgh, and one in Cincinnati. It sold the Cincinnati store, the effective date of which was January 1, 1917.

23. The date set forth in original findings of fact Nos. 11 and 12 should read March 28, 1923, instead of March 18, 1923.

24. There is no evidence that plaintiff would not have executed the waiver of March 28, 1923, if it had known that the statute of limitations was a bar at the time of the execution thereof.

25. There is no evidence of mistake in the execution of the waiver of January 18, 1924.

26. The execution of the two waivers by either the plaintiff or the Commissioner was not proven.

27. The net cost or price of the Cincinnati store purchased by plaintiff was $202,203.68.

28. The plaintiff sold the Cincinnati store by bill of sale and contract effective January 1, 1917, and received therefor $150,260.48, which is made up as follows: 500 shares of its capital stock, which had a fair market value, at the time of the effective date of the sale, of $266,500, from which is to be deducted $116,239.52, liabilities assumed and paid by plaintiff, making a net loss of $51,943.20.

29. The book value of plaintiff's stock the effective date of the sale was $533 per share. The sale price of the only stock sold within a year of the transaction involved was approximately at the book value of plaintiff's stock.

30. The earnings of plaintiff from 1912 to 1917, inclusive, were as follows:

| Year | Amount |
| --- | --- |
| 1912 | $484,880.61 |
| 1913 | 415,097.08 |
| 1914 | 196,931.55 |
| 1915 | 294,121.51 |
| 1916 | 605,182.35 |
| 1917 | 340,535.58 |

### Additional Conclusions of Law.

3. The waivers of March 28, 1923, and January 18, 1924, were effective and binding on the parties during the times specified therein, and the government was not precluded from the collection of the tax involved by reason of the statute of limitations.

4. The sale of the Cincinnati store did not amount to a capital transaction from which neither gain nor loss could result.

5. Plaintiff is entitled to deduct from gross income the amount of the loss sustained by it on the sale of its Cincinnati store.

6. Plaintiff is entitled to judgment in the amount of tax shown to have been overpaid on a recalculation allowing plaintiff a deduction from gross income of $51,943.20 on account of the loss sustained by it on the sale of its Cincinnati store and in the additional sum of $9,233.80 on account of the loss sustained by the abandonment of its mail order cuts.

### Opinion.

Plaintiff's action is to recover $20,080.36 with interest, which it avers was the amount of the tax which it was illegally required to pay. This tax the plaintiff alleges arose from overassessments made by the Commissioner of Internal Revenue in refusing to allow credits claimed by plaintiff for loss in the sale of its Cincinnati store, and for the depreciation of certain cuts, which claims for credit were made in plaintiff's tax return for the year 1917, and for the further reason that the collection of the tax was barred by the statute of limitations.

After the original hearing this court made findings of fact, conclusions of law, and entered a judgment in plaintiff's favor. This judgment was based on the premise that the collection of the tax involved was barred by the statute of limitations; that the two waivers executed by plaintiff and the Commissioner of Internal Revenue after the statute of limitations had run were ineffective. An appeal from this judgment was taken by defendant to the Circuit Court of Appeals for

the Third Circuit. Before hearing thereon the Supreme Court, in the case of Stange v. U. S., 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335, held that waivers executed after the statute of limitations had run were effective to continue the government's right to assess and collect the taxes specified in the waivers during the time designated therein. By reason of this decision and for the further reason that the record did not contain sufficient findings of fact and conclusions of law for a full determination of the controversy whether plaintiff was entitled to an allowance for loss in the sale of its Cincinnati store, and by reason of depreciation in value of certain cuts in its return for 1917, the judgment was reversed and the case was remanded for the taking of additional evidence and the making of such additional findings of fact and conclusions of law as would appear necessary and proper to determine the issues between the parties.

In pursuance of the above order a further hearing was held. The court has made the foregoing additional findings of fact and conclusions of law.

Defendant now concedes that plaintiff was entitled to the loss claimed of $9,230.60 for depreciation of certain cuts. We have found as a fact that plaintiff did suffer a loss of $51,943.20 in the sale of its Cincinnati store.

Plaintiff contends that the statute of limitations was a bar to the collection of tax paid because the waiver of March 28, 1923, was executed under a mistaken belief by the plaintiff and the Commissioner of Internal Revenue that the statute of limitations had not run when it was executed. There is no evidence that plaintiff would not have executed the waiver if it had known the statute of limitations had run at the time of the execution thereof. The strong inference from plaintiff's letter (set forth in findings of fact No. 10) is that it would have executed the waiver if it had had such knowledge at the time of the execution thereof.

There is no evidence of any mistake by either party in relation to the execution of the waiver of January 18, 1924. I, therefore, conclude that the two waivers were effective during the time specified therein.

■ Plaintiff further contends that the waivers should not have been received in evidence for the reason that the Commissioner's signature had not been proven. This is a very unusual and technical objection. If it were valid, it would mean that a rehearing should be held so that the defendant might be permitted to prove the Commissioner's signature.

In defendant's affidavit of defense he sets up the waivers. Plaintiff, in its reply, did not deny the Commissioner's signature or affirm that it was not his signature. Therefore, this question was not at issue. There is no contention now, so far as we know, that the signatures attached to the waivers, and purporting to be the Commissioner's signatures, are not his signatures. Plaintiff impliedly admitted the execution of the waivers by it.

No authority has been cited requiring formal proof of the signature of the Commissioner. Such a waiver is a voluntary, unilateral act by a taxpayer waiving a defense. Stange v. U. S., 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335.

■ Plaintiff contends that it suffered a loss of $51,943.20 in the sale of its Cincinnati store, the effective date of which was January 1, 1917; that this loss is evidenced by the loss taken on its books immediately thereafter, of $60,056.84, by the book value of its stock at the time of the effective date of the sale, and by a proximate subsequent sale of its stock at approximately the book value thereof. These facts are not denied by defendant, but he contends that plaintiff did not suffer any loss for the reason that plaintiff did not make any allowance for good will in fixing the book value of its stock. The only evidence of good will that was offered was a possible inference from the earnings of plaintiff from 1912 to 1917, inclusive. There are many elements which enter into good will of which there is no evidence.

It would seem, therefore, that when the loss claimed is less than that which the taxpayer took on its books immediately after the sale, that the loss claimed is consonant with the book value of its stock, and with the only sale thereof, made at a time proximate thereto, that this evidence constitutes the best evidence of the fair market value of plaintiff's capital stock which it received in payment for the Cincinnati store.

Defendant contends as a matter of law that plaintiff having exchanged its Cincinnati store for 500 shares of its capital stock, that no gain or loss is recognizable in determining plaintiff's taxable income.

Looking at the substance rather than the form, which the law does, the transaction in this case was a sale by plaintiff of its Cincinnati store. The consideration that plaintiff received was some of its own capital

stock. That plaintiff regarded the transaction as a sale is evidenced by the entry taken on its own books of loss on the sale of the Cincinnati store. If the sale had been for a cash consideration or for other property of the purchaser, and plaintiff had suffered a loss thereby, it would undoubtedly have been entitled to a credit therefor. If some other person had owned and sold the Cincinnati store and received plaintiff's capital stock in payment, that person would have been entitled to a credit for the loss sustained in the computation of his income. Plaintiff suffered a loss. I see no good reason why that loss should not be considered in the computation of its income. The decisions of the Board of Tax Appeals are in conflict. Our attention has been called to only one court decision in point. In Walville Lumber Co. v. Commissioner of Internal Revenue, 35 F.(2d) 445, 446 (C. C. A. 9), the taxpayer exchanged stock it owned of another corporation for stock, or the right to stock, of its own. It suffered a loss thereby. The question before the court was whether the taxpayer was entitled to have this loss computed in the determination of its income. The court held that it had, saying:

"It will thus be seen that as a net result of what was done appellant realized from its 4,400 shares of the Manufacturing Company's stock the value which the 756 shares of its own common stock would have had had they been issued to it or, upon a sale thereof, issued to some third person. * * *

"The Commissioner's disallowance was based solely upon the assumption that what was done constituted a 'capital transaction' within the meaning of article 862 of Regulations 45 and is ruled by Office Decision 479; Cumulative Bulletin III–2, but upon an examination of the regulation and the decision we are unable to perceive its applicability. We are not here concerned with what appellant did with the proceeds of its liquidated investment in the 4,400 shares, but only with the loss it sustained upon such liquidation. Had appellant caused to be issued and sold the 756 shares it realized from the 4,400 shares, or sold to the third person its right to have such shares issued, the result would have been precisely the same. In any case, what it actually got for its investment in the 4,400 shares, admittedly amounting to $225,967.28 on March 1, 1913, was $107,197.53, and the difference between the two amounts constitutes its actual loss. More analogous than the office decision cited are the following decisions of the Board of Tax Appeals: Behlow Estate Co. v. Commissioner, 12 B. T. A. 1365; Callanan Road Improvement Co. v. Commissioner, 12 B. T. A. 1109; New Jersey Porcelain Co. v. Commissioner, 15 B. T. A. 1059."

We are in accord with the reasoning in that case.

Let an order be prepared directing the entry of judgment in accordance with the foregoing findings of fact, conclusions of law, and this opinion.