## COMMISSIONER OF INTERNAL REVENUE v. INLAND FINANCE CO.

No. 6925.

Circuit Court of Appeals, Ninth Circuit.
Feb. 27, 1933.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., for petitioner.

G. M. Ferris and B. H. Kizer, both of Spokane, Wash., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

SAWTELLE, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals (23 B. T. A. 199), determining that no tax liability accrued against the taxpayer for the years 1922, 1923, and 1924, under section 213 of the Revenue

Acts of 1921 and 1924 (42 Stat. 227, 237, and 43 Stat. 253, 267 [26 USCA § 954 and note]). During these years a number of contracts covering subscriptions to the capital stock of the taxpayer were canceled for nonpayment of deferred installments, and the payments previously made thereon were declared forfeited to the taxpayer. The question here presented is whether the forfeited payments constitute income of the taxpayer and are taxable as such under the revenue acts.

The taxpayer is a corporation organized under the laws of the state of Washington, where it maintains its principal office, and is engaged in the business of investments and loaning of money. A substantial amount of its capital stock was sold on the deferred payment plan, and the subscription agreements contained the following provision for forfeiture upon default in payments: "If the subscriber shall fail to pay any of said installments when due and said default shall continue for at least thirty days, then and in such case the company may, at its option, while such default continues, terminate this agreement and all rights of the subscriber thereunder; and shall hold all sums paid hereunder as and for liquidated damages. * * * *"

As above stated, a number of subscription agreements were canceled for nonpayment of installments. None of the forfeited stock was resold to other parties, and only a few of the subscribers took advantage of an offer to reinstate their subscription agreements. The president of the taxpayer testified that: "After the cancellation of these contracts * * * some of the parties who held contracts were given an opportunity and asked for reinstatement. Probably twenty-five or thirty of them were reinstated. All of them were given the opportunity and right to reinstatement that made application and still have that right. The company is willing to reinstate any of these that would pay those amounts."

The Commissioner contends that, after corporate action had been taken canceling the subscription agreements, the amounts forfeited thereunder became the absolute property of the taxpayer, without qualification or condition, that is, not subject to reinstatement, and that therefore the forfeited payments were income. Although the subscription agreements contained no provision for reinstatement after cancellation, the evidence, as we have just seen, discloses that the agreements were subject to reinstatement at any time at the option of the subscriber, and that some of the agreements were reinstated. For these latter, the Commissioner made proper allowance in computing the asserted tax. In any event, we are of opinion that the Board correctly determined that the forfeited payments did not constitute "income," as the term has been defined; namely, gain derived from capital or labor, or from both combined. Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

Affirmed.