## UNITED NAT. CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

No. 10556.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1944.

HEALY, Circuit Judge, dissenting.

Roger L. Shidler and Harroun & Shidler, all of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Robert N. Anderson, I. Henry Kutz, and James P. Garland, Sp. Assts. to Atty. Gen., for respondent.

Sullivan & Cromwell, of New York City (Eustace Seligman and William F. Kennedy, both of New York City, of counsel), amicus curiæ.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is a review of an order of the Tax Court determining a deficiency in income taxes of the petitioner, hereinafter called the taxpayer, for its fiscal tax year ending June 30, 1939. The claimed deficiency arose from a failure to return as gross income $15,291.75, distributed to taxpayer in the tax year by Murphey, Favre & Co., a corporation, hereinafter called the Murphey Co., having only common shares outstanding, of which taxpayer held all.[1]

The distribution of the $15,291.75 was incidental to a redemption of three-fourths of the Murphey Co.'s common stock owned by taxpayer, in which certain capital and earnings and profits also were distributed. That company did not trade in its own shares. The source of the $15,291.75 was a reorganization in 1932 of the capital structure of the Murphey Co. in which all the preferred shares then outstanding were eliminated by the process of corporate redemption.[2] The eliminated preferred shareholders received $20,389 less than the subscriptions paid in on the original issuance of the shares and as a result of the reorganization that amount of capital remained in the corporation for the benefit of the remaining shareholders. The $15,291.75 is three-fourths of $20,389.

Both parties necessarily assume that this amount of the original subscription moneys remained in the corporation in 1932 and has not been lost in the business transactions of the succeeding seven years to the date of distribution to the taxpayer.

All the facts are agreed. The sole question here is one of law. Did the Tax Court err in its conclusion of law that the $15,291.75 should have been added to the taxpayer's taxable gross income as a distribution of "earnings or profits" of the Murphey Co. under § 115(g) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev. Code, § 115(g), instead of holding it a capital distribution to be deducted from the cost of the redeemed shares in determining the base for a gain or loss under § 115(d).

Section 115(g) provides "(g) Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, *to the extent that it represents a distribution of earnings or profits* accumulated after February 28, 1913, shall be treated as a taxable dividend." (Emphasis supplied.)

The Tax Court held that "the Murphey Co. realized a gain of $20,389 upon the redemption of all its preferred stock. Of course that gain was not a taxable gain. But we think it must be considered as constituting part of the 'earnings or profits accumulated after February 28, 1913.'" Obviously, this statement is erroneous for, if this is a corporate gain, it is a taxable gain. "Gains" is the first item included in taxable gross income. They include gains "from any source whatever," except certain enumerated items of which none is here applicable.[3]

The only legal conclusion from the facts is that the Murphey Co. realized no in-

---

[1] The parties are agreed that the taxpayer corporation is liable on the assumption that the two corporations are separate entities not affected by the stock control.

[2] "We treat the case as presenting but one question. A corporation which purchases shares of its own stock for less than the sum for which it was issued and then retires the stock may have been advantaged by the transaction in a sense but the real gain is by its remaining stockholders and not by the corporation as such. The change affected is merely a change in the capital structure. The Treasury Regulations so stated and the Courts have so ruled. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570." First Chrold Corp. v. Com'r of Int. Revenue, 3 Cir., 97 F.2d 22.

[3] "Sec. 21. Net income

" 'Net income' means the gross income computed under section 22, less the deductions allowed by section 23. * * *

"Sec. 22. Gross income

come whatsoever from the transaction and it is only income which is taxable. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. It already had the $20,389 of capital assets in its business and they remained there after the redemption of the stock.

While in the accounting of corporate capital (as distinguished from corporate income) there appears an obligation to the holders of par or declared value stock in the amount of the total par value or declared value of all such outstanding stock, no such corporate obligation in fact exists to any one. Since subscriptions to capital are not income and since the $20,389 never left the corporation, it does not become income because, on the reorganization of the corporation's capital structure, a bookkeeping entry of a non-existent liability to subscribers is eliminated.

We hold that this $20,389 had not ceased in the year 1939 to be what it was many years before when first subscribed and paid into the Murphey Co. for the original issuance of the preferred stock—that is a contribution to capital. The fact that in 1939 no particular shares were outstanding against the $20,389 does not make it income to the Murphey Co. This court held in Commissioner v. Inland Finance Co., 9 Cir., 63 F.2d 886, 887, where no stock was ever issued to certain subscribers to the capital of a corporation and they forfeited the part payments of their subscriptions, that the forfeited subscriptions moneys coming into the corporation as capital were not transmitted into income because there was no corresponding stock outstanding.

Indeed, as the law was in 1929, 1931 and 1932, when the preferred redemptions were made, even if the Murphey Co. had been in the business of buying and selling its own shares, and this $20,389 had been

a profit by virtue of the successive business purchases and sales of its own treasury shares, the profit was held to be a capital gain and not taxable as income. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 114, 59 S.Ct. 423, 83 L.Ed. 536. There the decision rests upon a Treasury Regulation[4] followed by several re-enactments of the section of the Revenue Act in question. The regulation has since been amended and the question is unsettled whether gains from the profitable dealing in treasury shares, as if they were the shares of another company, are income. We are not concerned with that question, because here there was no such dealing and nothing came into the corporation. The $20,389 never ceased to be capital.

The Commissioner relies on our decision in Golden State T. & R. Corp. v. Commissioner, 9 Cir., 125 F.2d 641, 643. That case was concerned with the acquisition by a corporation of its own stock by transfer, not its extinction by redemption. There was no change in the capital structure as by the redemption of all the preferred shares, leaving in the corporation none but the common shares. The Inland Finance case is not even mentioned, much less overruled.

The Commissioner there held on the facts that certain stock issued by the taxpayer corporation which were acquired by another corporation in which taxpayer was a stockholder and which were distributed to the taxpayer, constituted a dividend of the earnings of the distributing corporation. There the distributing corporation was not dealing in its own but the shares of another company. We held that because it was a dividend from earnings *when it came out* of the distributing corporation, § 115(a) made it a *dividend* in the hands of the distributee, not of the value of the original subscription on its

---

"(a) General definition.—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *" Revenue Act 1938, 26 U.S.C.A. Int.Rev.Acts, page 1008.

4 "Article 66 of Treasury Regulations 74, promulgated under the Act of 1928, so far as material, is: 'If * * * the corporation purchases any of its stock and holds it as treasury stock, the sale of such stock will be considered a capital transaction and the proceeds of such sale will be treated as capital and will not constitute income of the corporation. A corporation realizes no gain or loss from the purchase or sale of its own stock.'" Helvering v. R. J. Reynolds Tobacco Co., supra, 306 U.S. 113, 59 S. Ct. 425, 83 L.Ed. 536.

original issue by the distributee, but its market value in the hands of the distributing corporation.[5]

Our Golden State T. & R. Corporation decision is based, in part, upon a decision of the First Circuit in Commissioner v. S. A. Woods Machinery Co., 57 F.2d 635. That case states the law as we understand it (57 F.2d at page 636), "Whether the acquisition or sale by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction involved. Walville Lumber Co. v. Com'r of Internal Revenue, 9 Cir., 35 F.2d 445; Spear & Co. v. Heiner, D.C., 54 F.2d 134. If it was in fact a capital transaction, i. e., if the shares were acquired or parted with in connection with a readjustment of the capital structure of the corporation, the Board rule [of non-taxability] applies. Doyle v. Mitchell Bros. Co., 247 U.S. 179, 184, 38 S.Ct. 467, 62 L.Ed. 1054; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. But where the transaction is not of that character, and a corporation has legally dealt in its own stock *as it might in the shares of another corporation,* and in so doing has made a gain or suffered a loss, we perceive no sufficient reason why the gain or loss should not be taken into account in computing the taxable income. * * *" (Emphasis supplied.)

In the instant appeal, the shares were acquired "in connection with a readjustment of the capital structure of the corporation," and were not dealt with as the corporation "might in the shares of another corporation."

The Commissioner lays stress on the proposition that there are "earnings or profits" which are excluded from a corporate taxpayer's return of gross income, such as the profit from a tax-free exchange of securities,[6] which securities when distributed by the corporation constitute a dividend in the hands of the distributee and are taxable as such, and cites Com-

missioner v. F. J. Young Corp., 3 Cir., 103 F.2d 137. There the gain is admittedly in the course of business between the two corporations exchanging the securities. None is shown to be the stock of either company. It was not a capital transaction. Unlike the $20,389 of subscribed capital which never became income by going out and coming into the Murphey corporation, the distributed securities came into distributing corporation as income.

So also no capital was used or affected in acquiring the profit of insurance receipts above premiums, not returnable as gross income but held a profit for distribution as a dividend, in Cummings v. Commissioner, 1 Cir., 73 F.2d 477. We are unable to see the relevance of such cases, all admittedly of income to the corporation, to capital acquired by subscription which remains in the corporation and continues to perform its unbroken capital function until distributed to the corporation's shareholders.

Nor are we able to understand the Commissioner's apprehensions about the danger of tax avoidance if such a distribution is regarded as of capital. No particular situations of facile avoidance are stated. Such a capital distribution well may increase a taxpayer's gross income by reducing the redeemed shares' base price. It is true that Congress at the particular moment taxed gains from shares of stock held as capital for over eighteen months at less than ordinary income, but that was a right conferred on the taxpayer. The only question is, Is the distribution in fact from the distributing corporation's capital? If it is, it is no attempt at tax avoidance so to claim it.

The order of the Tax Court is reversed. The Tax Court should determine the tax liability arising from the distribution of the three-quarters of the $20,389 in accord with the views here expressed.

Reversed.

HEALY, Circuit Judge, dissents.

---

[5] The language of the decision is: " * * * The stock of the parent corporation held by the subsidiary was part of the latter's assets just as much as though it had been the stock in another corporation. The stock was distributed by the subsidiary to its stockholder without consideration. This distribution was held by the Commissioner to be a dividend of its earnings and his ruling is presumptively correct. Fitch v. Helvering,

8 Cir., 70 F.2d 583. We therefore have a parent company receiving a dividend of a market value of $65,295.45. We find no difficulty in upholding the conclusion of the Board of Tax Appeals." Golden State T. & R. Corp. v. Commissioner, supra, 125 F.2d 643.

[6] Under § 112(b) (5) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 377.