THE GRISWOLD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68628.    Promulgated November 22, 1935.

*E. Sheldon Stewart, Esq.*, for the petitioner.
*R. E. Smith, Esq.*, for the respondent.

OPINION.

Morris: Subdivision (c) of section 202 of the Revenue Act of 1921 and paragraph (3) thereunder provide as follows:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized.

\*    \*    \*    \*    \*    \*    \*

(3) When (A) a person transfers any property, real, personal or mixed, to a corporation, and immediately after the transfer is in control of such corporation, or (B) two or more persons transfer any such property to a corporation, and immediately after the transfer are in control of such corporation, and the amounts of stock, securities, or both, received by such persons are in substantially the same proportion as their interests in the property before such transfer. For the purposes of this paragraph, a person is, or two or more persons are, "in control" of a corporation when owning at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

When Morton F. Plant died, in 1918, he owned 20,000 shares or all of this petitioner's outstanding capital stock and those shares became a part of his estate. On May 24, 1923, the executors of his estate surrendered 10,400 of those shares to the petitioner and on June 5, 1923, such executors apportioned the remaining 9,600 outstanding shares among the residuary trusts of Plant and Henry B. Plant, 8,400 to the trusts and 1,200 to Plant. Consequently, those trusts, on August 1, 1923, owned 8,400 shares of the petitioner. On that date the said executors exchanged certain securities, among which were the 4,000 shares of preferred stock of the West Bay Co., for 4,800 shares of this petitioner's capital stock and, on the following day, August 2, 1923, the executors apportioned said 4,800 shares among the said residuary trusts and Henry B. Plant. The stipulated fair market value of the West Bay Co. stock having been $100,000 on November 4, 1918, the date of the decedent's death, and only $50,000 on August 2, 1923, the date when the exchange was consummated by apportionment of the shares received by the executors to the residuary trusts, it is contended by the petitioner, on the one hand, that the former value

should be used in determining the loss because of the admitted worthlessness within the taxable year, and it is contended by the respondent, on the other, that the latter value should be used because the transaction between the executors and this petitioner on August 1 was not such a transaction as described in subdivision (c) (3) of section 202, *supra*.

The petitioner argues that where property held by an executor as part of the residuary estate is turned over to a corporation in exchange for capital stock in such corporation and when immediately thereafter the said executor and the residuary legatees hold more than 80 percent of such corporation's outstanding stock, the transaction is one upon which no gain or loss is recognized, hence, no change of basis, and, consequently, the value at the time of the death of Morton F. Plant in 1918 should be used for the purpose of determining the claimed deduction.

The respondent's sole argument is that the residuary trusts, or trustees, owned 87½ percent of the petitioner's stock on August 1, 1923; that after the exchange on that date the outstanding capital was 14,400 shares—owned, 8,400 shares by the trustees, being 9,600 shares less 1,200 distributed to Henry B. Plant, and 4,800 shares by the executors—and that the two entities are separate and distinct. It is conceded by him that if the separateness of the entities be ignored the " executors-trustees " owned 88⅔ percent after the transaction in question, begun on August 1, 1923, by the receipt of the petitioner's stock by the executors, for other stock, and ending with the apportionment of that stock, so received, to the residuary trusts on August 2, 1923.

We are of the opinion that the solution of this question lies within the principle of *Brewester* v. *Gage*, 280 U. S. 327. Although the two cases arise under different sections of the revenue acts, they have one vital characteristic in common, namely, the date of acquisition of property. In one we find the question when property was " acquired by bequest, devise, or inheritance ", in contemplation of the statute, that is, whether it was acquired upon the death of the testator, or, when physical distribution was made by his estate. In the other we have the question of the date of acquisition of property under an exchange provision of the statute for the purpose of determining control of a corporation, that is, whether the residuary trusts prior to distribution owned the property constituting the residuary estate and were in control of the stock of the corporation after the exchange in question or whether physical distribution is a necessary factor in the determination of that control. In the one the residuary legatee was an individual, while the residuary legatees in the other were trusts, but that distinction is immaterial. *Security Trust Co. et al., Trustees*, 25 B. T. A. 29.

If the property in the estate of Plant was acquired, in legal contemplation, by his residuary trustees, upon his death, then it must necessarily follow that all future acts affecting that property must be viewed in the light of the interests of such residuary trusts, irrespective of the fact that physical consummation of the transaction by which property of the estate was exchanged for other property was accomplished by a legal entity other than those residuary trustees, i. e., executors.

*Brewster* v. *Gage, supra*, points out the distinguishing characteristics governing the vesting of real and personal property, that is, upon death of the owner title to his realty passes to his heirs or devisees, whereas, in a case of personalty, it does not immediately vest. The Court says, however, speaking of the latter:

* * * But immediately upon the death of the owner there vests in each of them the right to his distributive share of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. [Citations.] Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue. The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees, and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death. * * *

When the executors, in the instant case, accepted the properties of the estate, upon the death of Plant, they were vested with all of its personal property "not for themselves", however, "but in the right of others for the proper administration of the estate and for distribution of the residue" thereof. The acts of the executors in the administration of the estate are in behalf of those who derive their rights from the estate, in this instance, the residuary trustees. Therefore, when this stock exchange took place on August 1, 1923, when an exchange of one type of ownership was made for another the executors surrendered for the residuary trustees an interest in one corporation for an interest in another. Whatever "control" was relinquished or acquired by that transaction was in the right of the residuary trustees and not of the executors themselves, who had no property rights *per se*.

We are of the opinion that the exchange in controversy was a nontaxable transaction, that no new base was established thereby and, therefore, that the basis for the determination of the loss in the taxable year under consideration is the value at the date of Plant's death in 1918 and not the value in August 1923.

The reasoning in support of the foregoing conclusion must be viewed in the light of the statutory definition, which makes ownership the test of what constitutes "control" and has no bearing upon the actual

control over the corporate affairs which a stockholder exercises through his vote. *Federal Grain Corporation*, 18 B. T. A. 242.

The loss claimed was on 4,125 shares of preferred stock of the West Bay Co. It is clear from the stipulation, however, that only 4,000 shares were involved in the exchange and that petitioner acquired 125 shares in 1924 upon the dissolution of the Terminal Realty Co. As to the 125 shares, therefore, the basis is the fair market value at the date of acquisition.

There is not enough evidence in the record bearing upon the second issue, relating to the exchange of Connecticut Electric Service Co. securities for stock of the petitioner, to warrant dealing with the subject matter at any length. Substantially all that we know is that there was such a transaction, but the purpose for which it was consummated, whether intended as a partial liquidation, as the petitioner argues, or not, we are unable to say. Not even are the resolutions of the petitioner effecting this exchange before us. The petitioner's books of account disclosed a profit upon the transaction of $355,754.27, which amount it reported in its return for 1930. The respondent has found that this amount was correctly reported. There is no evidence to overcome the correctness of the treatment of this transaction as it now stands. The respondent's determination upon this issue must be sustained. See *Commissioner* v. *Woods Mach. Co.*, 57 Fed. (2d) 635; certiorari denied, 287 U. S. 613.

*Judgment will be entered under Rule 50.*