*Decision will be entered under Rule 50.*

Brown Shoe Company, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 102047. Promulgated September 26, 1941.

*Charles B. McInnis, Esq.*, for the petitioner.
*Carroll Walker, Esq.*, for the respondent.

214

**OPINION.**

LEECH: Respondent has taxed the petitioner upon the difference on the price it paid and that received for its stock sold in the taxable year to its president and certain employees. Whether authority existed for this action presents the only issue.

The Revenue Act of 1936 applies. Respondent argues that section 22 (a) of that act is effectively construed by Regulations 94, article 22 (a)–16,[1] and supports the tax. Petitioner contends that the

---

[1] ART. 22 (a)–16. *Acquisition or disposition by a corporation of its own capital stock.*— Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Act.

quoted regulation is not a valid interpretation of the statute and, even if so, it precludes the contested tax since, it is argued, in carrying on the transactions giving rise to the tax, the petitioner was not dealing in its own stock "as it might in the shares of another corporation."

Of course the intention of Congress, as expressed in section 22 (a), *supra*, is controlling. But section 22 (a), the provisions of which have appeared in every revenue act without pertinent change since that of 1916, is so general in its terms as to be the appropriate subject of an interpretative regulation. *Commissioner* v. *Reynolds Tobacco Co.*, 306 U. S. 110; *First Chrold Corporation* v. *Commissioner*, 306 U. S. 117. Until May 2, 1934, respondent by regulation had consistently construed the provision as meaning that the corporation realized no gain and sustained no loss upon purchases and sales of its own stock. *National Home Owners Service Corporation*, 39 B. T. A. 753. On May 2, 1934, respondent issued T. D. 4430, reported in C. B. XIII-1, p. 36, amending the outstanding regulations as follows:

\* \* \* Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. \* \* \*

But where a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. \* \* \* Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of applicable statutes.

In *National Home Owners Service Corporation, supra*, we held that the regulations, as amended by T. D. 4430, *supra*, was not an effective interpretation of section 22 (a) as passed by Congress in the Revenue Act of 1934, on May 3, 1934. The basis for that decision was that "Congress, in enacting that act, can not be presumed to have had in mind the regulation as amended."

Here we are concerned with the prospective application of the Revenue Act of 1936 passed by Congress on June 20, 1936. See *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90. True, section 22 (a) of the 1934 Act was there reenacted without change, but, when Congress passed the 1936 Revenue Act, the regulations, as amended by T. D. 4430, *supra*, appearing without further change as article 22 (a)-16 in Regulations 86, promulgated under the 1934 Act, had been outstanding for more than two years. In such situation, we think that, by passing the 1936 Act, Congress approved the interpretation of section 22 (a) announced in the regulations as amended by T. D. 4430, *supra*, and in article 22 (a)-16 of Regulations 86, and thus authorized the repetition of that interpretation in article 22 (a)-16 of Regula-

tions 94 issued under the latter act. This interpretation was therefore valid and effective during the tax year. *Helvering* v. *Wilshire Oil Co., supra; Trinity Corporation,* 44 B. T. A. 1219; see also *Elizabeth G. Augustus,* 40 B. T. A. 1201; affd., 118 Fed. (2d) 38; cf. *Squibb & Sons* v. *Helvering,* 98 Fed. (2d) 69;[2] modified, 102 Fed. (2d) 681.

Were the present transactions of petitioner in its own stock taxable under section 22 (a) of the Revenue Act of 1936 as construed by Regulations 94, article 23 (a)–16? We think they were.

Under the circumstances, the intention of respondent as expressed by such regulations is controlling. Section 22 (a) defines income as including "gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property * * *." The Supreme Court, in *Helvering* v. *Clifford,* 309 U. S. 331, said: "The broad sweep of this language [section 22 (a)] indicates the purpose of Congress to use the full measure of its taxing power within those definable categories." In *Commissioner* v. *Woods Machine Co.,* 57 Fed. (2d) 635; certiorari denied, 287 U. S. 613, the Circuit Court of Appeals reversed the Board and held that:

Whether the acquisition or sale by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction involved. *Walville Lumber Co.* v. *Com. of Internal Revenue* 35 F. (2d) 445; *Spear & Co.* v. *Heiner* 54 F. (2d) 134. If it was in fact a capital transaction, i. e., if the shares were acquired or parted with in connection with a readjustment of the capital structure of the corporation, the Board rule applies. *Doyle* v. *Mitchell Bros. Co.* 247 U. S. 179, 184; *Eisner* v. *Macomber,* 252 U. S. 189. But where the transaction is not of that character, and a corporation has legally dealt in its own stock as it might in the shares of another corporation, and in so doing has made a gain or suffered a loss, we perceive no sufficient reason why the gain or loss should not be taken into account in computing the taxable income. * * *

Respondent, thereafter, promulgated T. D. 4430, *supra,* amending the then existing regulations which, as thus amended, were repeated as article 22 (a)–16 of Regulations 86 and 94.

Thus, it seems scarcely possible that either respondent in so amending the regulation or Congress in approving it intended to limit the application of section 22 (a) to an extent both must be presumed to have then known was unnecessary. *Helvering* v. *Wilshire Oil Co., supra; Elizabeth G. Augustus, supra.* Cf. *National Home Owners Service Corporation, supra.* Yet that is the position of petitioner. *Commissioner* v. *Woods Machine Co., supra; Commissioner* v. *Boca Ceiga Development Co.,* 66 Fed. (2d) 1004; *Johnson* v. *Commissioner,* 56 Fed. (2d) 58; certiorari denied, 286 U. S. 551; *Dorsey Co.* v. *Commissioner,*

---

[2] It is to be noted that this case was decided by the Second Circuit Court of Appeals before the Supreme Court decided *Helvering* v. *Wilshire Oil Co., Inc., supra.*

76 Fed. (2d) 339; certiorari denied, 296 U. S. 589; *Allyne-Zerk Co.* v. *Commissioner*, 83 Fed. (2d) 525; *Houghton & Dutton Co.*, 26 B. T. A. 52; *E. F. Simms*, 28 B. T. A. 988; *William L. James*, 30 B. T. A. 491; and *Griswold Co.*, 33 B. T. A. 537. It singles out the provision in article 22 (a)–16, Regulations 94, which reads: "But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another." This sentence, it is argued, limits the transactions in its own stock upon which a corporation realizes a taxable gain to those there described. But, assuming the existence of the doubtful premise that petitioner did not so deal with its own stock here and would not have done so, if necessary to hold its valued employees, or otherwise, petitioner "might" have so bought and sold the stock of another corporation.

However, there is another and, we think, fatal weakness in petitioner's position. The meaning of the pertinent regulation must be gathered from its entire context. Inconsistencies and contradictions must be avoided so far as possible. The first sentence of this regulation is: "Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances." It is apparent that to give controlling effect to the sentence of the regulation to which petitioner points would require the elimination of the condition named in the quoted first sentence that the taxable character of the transaction "depends" upon "the real nature of the transaction." In our opinion, "the real nature of the transaction" is the determinant under this regulation, which fixes the taxable status of transactions of a corporation in its own stock. The rest of the regulation includes only examples of such transactions to facilitate the intended delineation of that "real nature."

The stock involved here was not canceled and then reissued. The capital structure of petitioner was not affected. No capital transaction, in fact, occurred. It is admitted that the stock was purchased for resale and sold. The limited field of purchasers and the bargain prices at which some of the stock was sold indicates only the reason for such purchases and sales. See *Chrysler Corporation*, 42 B. T. A. 795.

Respondent is sustained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK dissents.