*Decision will be entered under Rule 50.*

EDISON BROTHERS STORES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 104424, 104425.   Promulgated October 24, 1941.

*Peter H. Husch, Esq.*, for the petitioner.
*Felix Atwood, Esq.*, for the respondent.

OPINION.

LEECH: These proceedings, consolidated for hearing, involve deficiencies in income tax for the years 1935 and 1937 in the amounts of $1,553.74 and $10,312.15, respectively. Petitioner is claiming an overpayment in 1935 in the amount of $673.75. The issues are (1)

whether petitioner realized taxable income from the sale of its own stock to its employees in 1935 and 1937; (2) whether it is entitled to a deduction in 1935 for the payment of a debt with its own stock based on the cost of such stock to petitioner or on the fair market value thereof at the time of the payment of the indebtedness; and (3) whether the difference between the fair market value of certain of petitioner's stock and the price at which it was sold to its employees represents an allowable deduction for 1935 as additional compensation to its employees.

We find the facts as stipulated.

Petitioner was incorporated on March 13, 1925, under the laws of Delaware by the five Edison brothers, who subscribed for and acquired the entire issue of its no par value common stock of 100,000 shares. Its principal office is located in St. Louis, Missouri. It filed tax returns for the years 1935 and 1937 with the collector of internal revenue for the first district of Missouri.

In 1929 petitioner reacquired from the Edison brothers 5,000 shares of its stock at $15 per share for the purpose of sale and distribution to its employees. The 5,000 shares were held by petitioner in its treasury and were designated in its annual statements as "Capital stock purchased for resale to employees."

Thereafter, in 1929, a total of 1,360 shares of the stock so acquired and held by petitioner, was allotted to certain of its key employees at a cost of $15 per share. Those employees were permitted to make installment payments, with the provision that interest on unpaid balance was to be charged to their respective subscription accounts and dividends were to be credited thereto at the rate declared and paid on common stock. Certificates of stock were not transferred until the respective accounts were paid in full. Due to the termination of employment and other reasons, certain accounts of the employees were canceled upon their request. These cancellations were made upon a cost basis and involved a total of 635 shares of the 1,360 shares allotted.

The employees' subscription price of $15 per share was adjusted to $7.50 per share as of January 31, 1932. This adjustment was made on all shares originally subscribed for, except subscriptions theretofore canceled. Those employees who had overpaid accounts as a result of this adjustment were given the election of receiving cash or additional shares of stock at $7.50 per share. Consequently, 195 additional shares of the aforementioned stock of petitioner were issued to these employees.

In 1933 petitioner purchased an additional 100 shares of stock, which was the only acquisition made by it of its common stock other than the original acquisition of 5,000 shares. The only other stock

transactions made by it prior to 1935 involved a sale of 500 shares to a director of the company at $15 per share and the issuance of 760 shares in the form of bonuses to employees.

On January 1, 1935, petitioner still had on hand 2,920 shares of this common stock, and in July of that year transferred 100 shares of it to George Frankenthaler, a New York attorney, in payment of his bill of $3,000 for legal services rendered. Frankenthaler acted as general counsel for petitioner from its incorporation and also has been a director thereof since May 9, 1934. He was reelected and served as a director each year since that time. At the time of this transfer, this stock had a fair market value of $30 per share, or an aggregate market value of $3,000. Petitioner claimed a deduction of this amount in its tax return for 1935, but respondent allowed a deduction of only $1,500, the cost to petitioner of the 100 shares purchased by it and transferred to this attorney in discharge of this $3,000 indebtedness.

During July and August of 1935, a total of 980 shares of its common stock was allotted and sold by petitioner to certain of its key employees at a price of $25 per share. The fair market value of this stock during these months was $30 per share. The respondent determined that petitioner realized a gain for 1935 of $9,800, the difference between the price at which petitioner purchased this stock and the price at which it was sold to its employees. This stock was sold pursuant to an "Employees' Stock Subscription Plan", the provisions of which are as follows:

PURCHASE PRICE

The purchase price in effect until August 1, 1935, shall be Twenty-Five ($25.00) per share; thereafter the purchase price of any subscription shall be determined from the open market quotation, being the last quoted sale on the New York Curb prior to the date of subscription less an allowance of $6.00 per share, which allowance shall be considered a contribution by the Company to all employees taking advantage of the allotment.

METHOD OF PAYMENT

Payment shall be made in cash or by monthly installments paid by the employee either by remittance or by deduction from salary, if so designated, provided that any installments in arrears 15 days shall be, at the option of the Company, deducted from salary.

Minimum monthly installments shall amount to at least Fifty Cents (50¢) per share subscribed.

Monthly installments shall be payable the 15th day of each month following date of subscription.

Subscriptions paid by minimum installments shall not be permitted to have reduced or lapsed installments except by approval of the Board of Directors.

INTEREST CHARGES AND DIVIDEND CREDITS

Interest on unpaid balances shall be charged semi-annually on June 30th and December 31st of each year at the rate of 5% per annum, but not exceeding

the annual rate of dividends on all outstanding Common stock; such rate of dividends to be determined by the purchase price.

Dividends earned on the stock subscribed shall be credited to the account of the subscriber on the respective dates declared payable. However, no dividend shall be credited if on such dividend dates monthly installments are in arrears for fifteen (15) days or more.

CANCELLATION PROVISION

It shall be understood by the subscriber that the subscription shall not be cancellable at any time while the subscriber is employed by the Company, except and unless approved under such conditions as are determined and prescribed by the Board of Directors.

In the event that the employment of the subscriber is terminated for any reason whatsoever except death, the employee shall receive such number of shares as are fully paid for at such time, and shall be reimbursed in cash for any amount representing credits to the account in excess of the even number of shares fully paid for. Subscription for the remaining number of shares unpaid for shall automatically become null and void.

In case of the death of the employee, any beneficiary named shall receive at the option of such beneficiary, refund of all cash payments made by the employee, plus interest at the rate of 5% per annum, or the number of shares fully paid for at the time of employee's death.

Thereafter, in 1935, 75 shares of petitioner's common stock were transferred and issued by it in conversion of 25 shares of its preferred stock, and in 1936 another 15 shares were so transferred and issued in conversion of 5 shares of its preferred stock, in accordance with the conversion privilege of such preferred stock. On January 1, 1937, petitioner still had in its treasury 1,750 shares of its common stock.

On or about March 1, 1937, pursuant to a reorganization of its capital structure, petitioner exchanged its common stock on a basis of three shares of new $2 par value common stock for one share of old no par value common stock, making the petitioner's cost basis on such new stock $5 a share; and thereafter, during that year, it allotted and sold to certain of its employees 3,660 shares of this new common stock at a price of $15 per share. This allotment and sale were made pursuant to another employees' stock subscription plan. The respondent determined that petitioner realized a gain for 1937 of $36,600, the difference between the price at which petitioner purchased this stock and the price at which it was sold to its employees.

In September 1937 petitioner paid an additional income tax for the calendar year 1935 in the amount of $5,204.54; and its petition in which it is claiming an overpayment for 1935 in the amount of $673.75 was filed with this Board on August 28, 1940.

Respondent has included as additional taxable income for the years 1935 and 1937 the amounts by which the price at which petitioner resold shares of its stock to its employees in those respective years

exceeded its cost of such stock. That action bases the first issue. Respondent contends that these respective amounts were taxable to petitioners under the definition of "gross income" under section 22 (a) of the Revenue Acts of 1934 and 1936, as respectively construed by the similar articles, 22 (a)–16 of Regulations 86 and 94.

The earlier cited regulation was not a valid construction of section 22 (a) of the Revenue Act of 1934 and the petitioner realized no taxable gain from its stock transactions occurring in 1935. *R. C. Reynolds, Inc.*, 44 B. T. A. 356; *National Home Owners Service Corporation*, 39 B. T. A. 753. But the last cited regulation is a valid and effective interpretation of section 22 (a) of the Revenue Act of 1936 in its application to the stock transactions occurring in 1937. *Brown Shoe Co.*, 45 B. T. A. 212; *Trinity Corporation*, 44 B. T. A. 1219. The petitioner argues further, however, that, assuming our last conclusion to be sound, that regulation is not applicable here since, as to the transactions in its own stock in 1937, it was not dealing "in its own shares as it might in the shares of another corporation." These transactions did not affect the capital structure of the petitioner. The stock was purchased for the purpose of resale and was actually sold. The fact that the sales were limited to petitioner's employees is not controlling. We think petitioner is taxable on the gains realized from such transactions in 1937. *Brown Shoe Co., supra; Trinity Corporation, supra.*

The second issue is whether petitioner is entitled to a deduction for the payment of a debt for legal services with its own treasury stock based on the cost of such stock to petitioner or the fair market value thereof at the time of the payment of the indebtedness in 1935. Petitioner purchased this stock with the other stock here involved at $15 per share and used 100 shares of it to pay this indebtedness, adopting as a basis for such payment its stipulated fair market value, $30 per share. Accordingly, petitioner deducted $3,000 on its 1935 return covering this expense, of which amount the respondent allowed only $1,500 on the ground that the difference between the cost of $1,500 of the stock and its value of $3,000 at the time of payment of the indebtedness constituted a gain which had not been included in taxable income.

Petitioner satisfied a fixed indebtedness of $3,000 by transfer of its capital stock having a fair market value in that amount. That transfer is effective here as a sale of such stock for that sum. This is admitted by respondent, since the premise of his contested action is that a gain of $1,500 was realized by petitioner upon this transfer. This being so, petitioner's taxable income may be increased by this amount only if such gain were taxable. But it was not taxable, as

we have already decided. Respondent may not thus indirectly tax this income by reducing in that amount the deduction to which petitioner is entitled.

The third issue is whether the difference between the fair market value of petitioner's stock and the price for which it was sold to its employees in 1935 constitutes an allowable deduction as additional compensation to its employees under section 23 (a) of the Revenue Act of 1934. It is stipulated that petitioner sold this stock to its employees for $25 per share and that it then had a fair market value of $30 per share. Petitioner contends that this difference of $5 per share, or $4,900, for the 980 shares sold to its employees in 1935 was additional compensation to them for services rendered.

Respondent argues on brief, for the first time, that petitioner has not established a fact essential to this deduction—that its amount, the difference between the fair market value of and the price at which the stock was sold to its employees, was a "reasonable allowance for salaries or other compensation." *Wagegro Corporation*, 38 B. T. A. 1225; *Brown & Haley*, 21 B. T. A. 752. However, that may be, petitioner is otherwise foreclosed. The answer to this issue, at all events, depends upon whether the agreement between petitioner and its purchasing employees, as to the amount of money to be paid by such employees in the acquisition of stock in the employer, was "fixed or controlled by services rendered or to be rendered" and whether the employees were to receive payment of their compensation in such stock. *Chrysler Corporation*, 42 B. T. A. 795; *Gordon M. Evans*, 38 B. T. A. 1406; *Delbert B. Geeseman*, 38 B. T. A. 258. In view of the contested determination, petitioner has the burden of establishing the existence of that premise of fact. We think it has failed so to do. That a provision of the contract between the petitioner and its employees provided that the amount by which the market value of the stock exceeded the purchase price should "be considered a contribution by the Company to all employees taking advantage of the allotment" is not sufficient evidence here to establish the intention of the parties to consider such differential as "fixed or controlled by services rendered or to be rendered" or that this purchased stock was to constitute compensation of the employees. *Delbert B. Geeseman, supra.* Respondent is affirmed on this issue.

*Decision will be entered under Rule 50.*