PITTSBURGH LAUNDRY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105506. Promulgated June 30, 1942.

*John A. McCann, Esq.*, for the petitioner.
*William A. Schmitt, Esq.*, for the respondent.

OPINION.

DISNEY: We have for consideration in this proceeding income and excess profits taxes for the calendar year 1937 in the respective amounts of $2,908.26 and $243.90, in which amounts deficiencies were determined by the Commissioner. The only question involved is whether

the petitioner realized taxable gain by reason of transactions in its own stock. A portion of the facts have been stipulated. The stipulation is by reference adopted as our findings of fact, which will be recited herein only in so far as required by examination of the issue at hand. The income and excess profits tax returns of the petitioner for the taxable period were filed with the collector for the twenty-third district of Pennsylvania. From the stipulation and other evidence we find facts as follows:

The petitioner is a Pennsylvania corporation, incorporated in 1925, and since that time engaged in a general laundry and dyeing business. It was formed to take over the assets of a partnership consisting of three men, Edward H. Caswell, Benjamin S. Mann, and Robert S. Sach, each of whom took stock in the corporation, about 35,000 shares each. The petitioner's authorized capital stock was $250,000, divided as follows:

| | |
|---|---|
| (a) 1,250 shares, $100 par nonvoting 7% cumulative pfd. subject to call at $100_____ | $125,000 |
| (b) 1,245 shares, $100 par, common nonvoting; to participate equally in dividends with "c" stock "except as to voting"_____ | 124,500 |
| (c) 5 shares, $100 par, common, voting—"Said stock, except as to its voting rights to be equal in all respects with the said class "b" common nonvoting stock"_____ | 500 |
| Total authorized stock_____ | 250,000 |

Edward H. Caswell died on August 10, 1933, leaving surviving him his widow, who inherited his stock in the petitioner. She sold her stock because she refused to do anything with the laundry; did not want to do anything with the laundry. Her financial condition was not good. The company arranged to buy her stock, consisting of 360 shares of common and 12 shares of preferred stock, June 30, 1936, in consideration of $350 in cash and $12.50 a week to be paid to her during her widowhood. She died on July 11, 1937. By that time the payments to her aggregated $1,662.50, and the basis, in the hands of the petitioner, of the shares thus acquired from her was $100 per share for preferred stock and $1.285 per share for common stock.

With reference to the purchase of stock in the petitioner corporation, the minute book of the board of directors of the petitioner showed as follows: On August 15, 1933, in connection with certain life insurance policies it was resolved that one-half of the proceeds were:

\* \* \* allocated and reserved for the special purpose of calling in and redeeming in the name of and for the benefit of the company, pro rata, the then outstanding preferred stock of the company.

On April 19, 1935:

Mr. Mann also advised the members that he was in a position to buy some of the Corporation Preferred Capital Stock at par or at a discount for the benefit of the Corporation. It was decided to permit Mr. Mann to make these purchases for the benefit of the Company.

## On November 22, 1935:

Mr. Mann reported that the following Preferred Capital Stock of the Company had been bought at par for Treasury purposes: Mr. Fleider, 1 share; N. Mann, 1 share; D. Silverman of Brackenridge, Pa., 12 shares; J. N. Hawkins, 4 shares. Mr. Mann explained that the checks given D. Silverman and J. N. Hawkins were returned to the Company and used to reduce their indebtedness to the Corporation. Mr. Mann also reported that one share had been bought from A. Halleck for $22.00 and that he intended going to New York where he expected to buy for the total price of $125.00 five shares held by L. Fred Klooz. A first payment of $140.00 was made to Max Moses for the stock he held and arrangements made to take monthly payments of $50.00.

## On August 28, 1936:

Mr. Mann reported that the Corporation had bought more of its own stock for treasury purposes. Mr. Mann also presented the meeting with the financial position of the Corporation.

## On April 16, 1937:

Mr. Zeck expressed a willingness to sell five shares of Preferred Stock he held as he expected to be in need of some money within a week or two. It was agreed for the Corporation to buy these five shares for the price of Five hundred dollars inasmuch as the Company was desirous of retiring the preferred stock and inasmuch as the Company was indebted to Mr. Zeck for accrued salaries.

## On December 17, 1937:

After discussion it was agreed to buy the 44 shares of Preferred Capital Stock held by Ida Mann at the price of $100 for each share. Mr. Mann agreed to buy 35 shares of common stock and Mr. Zeck agreed to buy 31 shares of Common stock at the total price of $7920.00.

## On December 16, 1938:

Mr. Mann advised the members that all preferred stock with the exception of one share were now held in the treasury. Those purchased during the year were enumerated.

When the corporation took action, it was shown by the minutes of the corporation and the entire transactions with respect to the stock are shown by the above minutes. One of the reasons for buying Mrs. Caswell's stock was that the company wished to retire the preferred stock.

At the beginning of 1937 petitioner had in its treasury 366 shares of its common stock, of which 360 shares had been acquired from Mrs. Caswell, together with 12 shares of preferred stock. During the year 1937, petitioner sold or exchanged 124 shares of its common capital stock, of which 123 shares were acquired from Mrs. Caswell as above and one share was acquired in 1928 at a cost of $100. Of the 124 shares so sold or exchanged, 105 shares were sold in 1937 for $11,820 in cash and 19 shares were exchanged for 19 shares of the petitioner's preferred stock which had a then value of $100 per share.

The 105 shares were sold for the purpose of retiring some of the preferred stock and the money received was used for that purpose.

Forty-four shares, being $4,400 par value of preferred stock, were purchased; also, small amounts of stock were purchased from time to time. No separate account was set up on the petitioner's books for gain or loss with regard to sales or purchases of stock. When stock was purchased for less than par, the difference was shown as surplus upon the corporation's books. The purchase of preferred stock was in pursuance of a plan to do away with the cumulative dividends on the preferred stock. The preferred stock was not actually retired, but was kept in the treasury of the company and is still kept in the treasury of the company. Except in one case, the common stock sold was sold in all instances to former holders of preferred stock. That instance involved 20 shares. The outstanding stock of the petitioner (less stock in the treasury) was as follows: On January 1, 1936, $22,700 preferred and $124,900 common; on January 1, 1937, $14,600 preferred and $88,400 common; on December 31, 1937, $2,300 preferred and $100,800 common.

Our question here is whether the petitioner realized gain from the purchase and resale of its own stock. This requires consideration of the object of section 22 (a), Revenue Act of 1936,[1] and article 22 (a)–16, Regulations 94.[2]

The above regulation provides that our answer depends upon "the real nature of the transaction, which is to be ascertained from all its facts and circumstances", and continues in effect that if the transaction is as if it were in shares of another corporation, gain is considered realized. The circumstances here are that there was a plan, though it appears somewhat indefinite, to call in the preferred stock. On the minutes of the corporation this is expressed variously, such as a "purpose of calling in and redeeming" the preferred stock, to "buy  *  *  * preferred stock  *  *  *  for the benefit of the Corporation"; that stock had been "bought at par for Treasury purposes"; or that the company was "desirous of retiring the preferred stock." The testimony was that the company wanted "to retire" the preferred stock, that plans were made in 1932 or 1933 to "retire" it, that the desire was to "get rid of the obligation", to do away with accumulated dividends on the preferred stock. As to the particular common stock herein

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property;  *  *  *

[2] ART. 22 (a)–16. *Acquisition or disposition by a corporation of its own capital stock.*— Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances.  *  *  *

But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another.  *  *  *

involved, the purchase and resale of which caused the determination of realized gain by the Commissioner, "one of the reasons" for the purchase was to retire preferred stock. It was, in fact, resold in the next year, the taxable year, except that 19 shares out of 124 shares were exchanged for preferred stock. The money was used to acquire preferred stock. During the taxable year 123 shares of preferred stock were acquired by petitioner. But neither common stock nor preferred was retired when acquired. The preferred stock is still kept in the treasury of the company, and no reason is shown in the evidence for such retention, or why there was no retirement. All preferred has, now been acquired. No separate account of gain or loss on the purchase and sale of the stock was kept on the books of the company. When stock was purchased for less than par, the difference was put into surplus on the books. With one exception, the common stock was sold to owners of preferred stock.

After examination of all these circumstances, we are of the opinion that the "real nature of the transaction" is not such as to show error on the part of the Commissioner in including the gain in the gross income of the petitioner. Though the petitioner's officers did have some purpose of retiring preferred stock, that was only one of the purposes actuating the purchase of the shares herein in question. The other was that the widow of one of petitioner's officers, who had inherited his stock, did not want to do anything, and refused to do anything, with the laundry, and the stock could be purchased, in part, on partial payments. The stock was purchased and was resold for the profit to be made. That such profit was intended to be used, and was used to retire a different grade of stock, seems to us not to detract from the commercial character of the purchase and sale of the common stock. The profit might well have been made from purchase and sale of stock in some other corporation. There has been, in fact, no retirement of preferred stock. In *Budd International Corporation*, 45 B. T. A. 737, 749, although the question was not precisely the same as here, but involved a redemption of preferred stock and the sale by the redeeming corporation of some other stock, nevertheless we considered that the redemption did not color the matter so as to indicate its "real nature" under article 22 (a)–16, Regulations 94, *supra*, and that there was sale, resulting in gain by the corporation. We think the same is true here. The purpose to which the profit herein involved was intended to be applied did not prevent the realization of taxable gain. *Brown Shoe Co.*, 45 B. T. A. 212. A profit was made on resale of petitioner's own stock. *Allen* v. *National Manufacture & Stores Corporation*, 125 Fed. (2d) 239.

We hold that the purchase and sale of common stock resulted in taxable gain to the petitioner.

*Decision will be entered under Rule 50.*