The Superheater Company v. Commissioner.
Superheater Co. v. Commissioner
Docket No. 105403.
United States Tax Court
1943 Tax Ct. Memo LEXIS 402; 1 T.C.M. (CCH) 780; T.C.M. (RIA) 43129; March 17, 1943
*402 John W. Burke, Esq., for the petitioner. Henry C. Clark, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The sole question presented here is whether petitioner is taxable upon gain from the sale on February 10, 1937, of 19,000 shares of its own capital stock. The Commissioner, as a result of certain adjustments, determined a deficiency in income tax for 1937 of $5,622.82. Petitioner accepted the adjustments but claims it erred in including in its 1937 taxable income, the sum of $425,115, representing the difference between the cost and the selling price of 19,000 shares of its common stock previously acquired. Prior to the mailing of the deficiency notice petitioner filed a claim for refund of. 1937 taxes upon the ground that the purchase and sale of said stock was a capital transaction. The case was submitted on oral testimony and exhibits. Findings of Fact Petitioner is a corporation incorporated under the laws of Delaware, with its principal place of business at 60 East 42nd Street, New York City. Its business is the manufacture of superheaters, feed water heaters and auxiliary equipment sold primarily to the railroad industry. It filed *403 its return with the collector of internal revenue for the third district of New York. It reported as income a gain of $425,115 from the sale of 19,000 shares of its treasury stock to Glore, Forgan & Co., brokers, under date of February 10, 1937. The stock was acquired by it at a cost of $570,675. The amount of gain is not in dispute. The tax shown to be due by petitioner's return was paid in installments as follows: March 14, 1938
$135,000.00
July 15, 1938
100,000.00
September 15, 1938
110,000.00
December 5, 1938
105,374.89
Petitioner's authorized capital stock is 1,200,000 shares, of which 985,208 were issued and outstanding, none of which have been retired since their original issuance. Since it started in business petitioner has reacquired and held in its treasury varying amounts of its own stock. It kept a separate account of the stock so held which was reflected in its balance sheet as an asset. Glore, Forgan & Co., under date of February 5, 1937, made a written offer to purchase 19,000 shares of petitioner's treasury stock at $52.50 per share. The offer was accepted and a bill of sale dated February 10, 1937 was executed. The offer recites that - The Company *404 [petitioner] represents and warrants that it has in its treasury 99,350 shares of its Common Capital Stock (which includes the 19,000 shares covered by this agreement), which have been reacquired by the Company and which the Company is lawfully entitled to reissue and sell to us; said shares are all fully paid and non-assessable, are all listed on the New York Stock Exchange and registered under the Securities Exchange Act of 1934, as amended. The offer further provides that Glore, Forgan & Co. represent they are purchasing the said shares for the sole purpose of reselling them to the investors listed in paragraph 1 and to no other person or persons, that We [Glore, Forgan & Co.] agree that we will not deliver any of said shares to any of the above listed investors until we have received from such investor a statement that he is purchasing the said shares of stock for his own account for investment and not with a view to distribution, and with no present intention of distributing or selling them, but subject, nevertheless, to any requirement of law that the disposition of his property shall at all times be within his control. The bill of sale executed by petitioner under date of *405 February 10, 1937, is as follows: In consideration of the sum of FIFTY-TWO DOLLARS and FIFTY CENTS ($52.50) per share, The Superheater Company does hereby sell, assign and transfer to Glore, Forgan & Co. nineteen thousand (19,000) shares of the capital stock of The Superheater Company, represented by Certificates No. 016993 (for 800 shares) 016991, 016992, 012129, 012130 (for 1000 shares each) 016988 (for 1200 shares) 016990, 016995 (for 2000 shares each) 016987 (for 4000 shares) 012112 (for 5000 shares), registered in the name of M. Schiller, Treasurer - The Superheater Company, said Certificates being dated January 31, 1933 and February 8, 1937; transfer taxes in the amount of $1710, (representing $950. Federal transfer taxes and $760. New York State Transfer taxes) being attached hereto. The negotiations between petitioner and Glore, Forgan & Co. began in October, 1936. The prices on the Stock Exchange for which petitioner's stock sold during the month of October, 1936, to and including February, 1937, were as follows: Low
High
October, 1936
36
40 1/2
November, 1936
36 5/8
48 1/2
December, 1936
47
60
January, 1937
54
60 1/2
February, 1937
56 1/2
61 3/4
*406 On June 29, 1939, petitioner filed a claim for refund of income and excess profits taxes in the amount of $104,343.71 and received payment of $2,371.88, including interest of $176.36, as an overassessment for the year 1937. The amount refunded did not involve any of the gain here in controversy. In the statement attached to the claim for refund petitioner asserted that the inclusion in taxable income for the year 1937 of the amount of $425,115 as gain from the sale of the 19,000 shares of treasury stock was erroneous for the reason that the sale of such stock represented a capital transaction and the proceeds thereof represented capital and not income. By order of the Board of Tax Appeals entered January 18, 1941, the proceeding was dismissed for lack of jurisdiction insofar as it related to excess profits tax, which order of the Board was affirmed by the United States Court of Appeals for the Second Circuit, 125 Fed. (2d) 514. Petitioner dealt with the 19,000 shares of stock as it might in the shares of another corporation. Opinion Petitioner contends that the gain realized from the sale of the 19,000 shares of its own stock in 1937 to Glore, Forgan *407 & Co. as brokers does not constitute taxable income to it under section 22 (a), Revenue Act of 1936, [1] within the meaning of article 22 (a)-16 of Treasury Regulations 94. [2] It further contends that the Regulation is invalid because it seeks to change the settled meaning of said section 22 (a) and tax as income that which is not income but in substance capital. *408 Respondent contends the gain is taxable under section 22 (a), Revenue Act of 1936, and that the quoted regulation is valid. The Board and the courts have recently considered the validity of the regulation in question on numerous occasions under similar facts and have consistently held the regulation valid. The arguments here urged by petitioner as grounds for holding the regulation invalid have been considered and determined adversely to petitioner's contention in the following cases: Trinity Corporation, 44 B.T.A. 1219; affd., 127 Fed. (2d) 604; certiorari denied, 63 S. Ct. 47; Brown Shoe Co., Inc., 45 B.T.A. 212; affd., (C.C.A., 8th Cir.), 133 Fed. (2d) 582; Edison Brothers Stores, Inc., 45 B.T.A. 472; affd., (C.C.A., 8th Cir.), 133 Fed. (2d) 575; Pittsburgh Laundry, Inc., 47 B.T.A. 230; Allen v. National Manufacture & Stores Corporation, 125 Fed. (2d) 239; certiorari denied, 316 U.S. 679; *409 Commissioner v. Air Reduction Co., 130 Fed. (2d) 145; certiorari denied, 63 S. Ct. 201. We deem it unnecessary to discuss these cases or cite others of similar import. They announce the law as presently applied and are a complete answer to petitioner's contentions. We, therefore, sustain the validity of the regulation in question. Petitioner contends that under the regulation whether the acquisition or disposition of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction which is to be ascertained from all the facts and circumstances, and the facts and circumstances here are such that it realized no taxable gain from the purchase and sale of the stock. It contends it did not deal in its own shares as it might in the shares of another corporation; that it did not buy the stock in question for the purpose of making a profit; that its purpose was to protect its employees and customers who held stock from the effects of a bear raid on the market; to distribute the stock so acquired to employees; to promote better cooperation, and as to customers and other *410 purchasers to build up and maintain trade and to protect the good will of the company which would otherwise have suffered; that the essence of the transaction was similar to the original issue of shares and the dominant characteristic of the sale was that of a capital transaction; that its consistent business policy in dealing with its own shares was in furtherance of its regular and normal business, and neither the purchase nor the sale was for the purpose of dealing in its own shares for profit. We are not persuaded by the contentions advanced by petitioner. Far more convincing to us is the fact that petitioner purchased the stock in question; carried it in its treasury as an asset; sold the 19,000 shares for a substantial profit, the proceeds of which were available for general business purposes, and its dealings in such shares in no way affected its capital structure. Regardless, therefore, of the motive or motives that activated petitioner, it did realize a gain from dealing in its own capital stock and that gain is taxable. Brown Shoe Co., supra;Edison Brothers Stores, Inc., supra;Pittsburgh Laundry, Inc., supra; *411 Allen v. National Manufacture & Stores Corp., supra;Commissioner v. Air Reduction Co., supra.In our opinion petitioner correctly reported the gain as taxable income in its 1937 return. Decision will be entered for the respondent. Footnotes
1. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross Income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of interest in such property; also from interest, rent, dividends, securities, or the transactior of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * ↩
2. ART. 22 (a)-16. Acquisition or disposition by a corporation of its own capital stock. - Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock. But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Act.↩