## J. H. HENTZ, ADMR., v. PENNA. CO. FOR INS.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 14, 1890—Decided April 28, 1890.
[To be reported.]

1. "Profits" are the excess of returns over advances, the excess of what is obtained over the cost of obtaining it; and "profits," and "net profits," are for all legal purposes synonymous expressions. There is no profit in a land speculation which does not return to the investor his purchase money, with interest thereon.

(*a*) An owner of land, purchased in 1856, for $4,500, agreed for a consideration to pay over to another one fourth of the profits realized " by the sale of or by the revenue arising from" said land, the promisee agreeing to pay one fourth of the loss, if any, arising "from the sale of said tract of land." The land was sold in 1887 for $7,793.75 :

2. The agreement made no separation of profits realized by the sale of the land from profits from its use, and the amount of profit realized by the landowner was to be ascertained by charging against the investment the purchase money and all other outlays, with interest, and crediting it with receipts from rentals and sales, and interest thereon.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 468 January Term 1889, Sup. Ct. ; court below, No. 405 December Term 1887, C. P. No. 4.

On December 21, 1887, J. Henry Hentz and Catharine Elliott, administrators of the estate of Jacob Hentz, deceased, brought suit against the Pennsylvania Company for Insurance on Lives and Granting of Annuities; and, on February 1, 1888, by agreement filed, a case was stated for the opinion of the

court, in the nature of a special verdict, which exhibited the following facts :

On February 19, 1856, James J. Van Syckel, and Jacob Hentz executed a written instrument, under their hands and seals, which was as follows :

"This agreement, between James J. Van Syckel, of Philadelphia, of the first part, and Jacob Hentz, of Philadelphia, of the second part, witnesseth, That for and in consideration of the sum of one dollar paid by the said party of the second part to the said party of the first part, the receipt of which is hereby acknowledged by the said party of the first part, the aforesaid party of the first part agrees to pay over to the said party of the second part one fourth of the profits which he the said party of the first part may at any time realize by the sale of or by the revenue arising from his undivided half part of a certain tract of land situated in Shippen township, McKean county, state of Pennsylvania, being in warrant 5,463, and containing six hundred acres, and this day purchased by the said party of the first part, from James Duffy, of Marietta, Lancaster county, state aforesaid; the said party of the second part hereby agreeing to pay one fourth of the loss, if any, which may arise from the sale of said tract of land. The cost of the aforesaid undivided half part of said tract of land being forty-five hundred dollars."

Said Van Syckel died in October, 1858, leaving a will whereby he devised his estate to Sarah B. Van Syckel, his executrix, in trust, with power by her will to name and appoint her successor. She died in 1871, having by will appointed the defendant as her successor, and devised said estate to it upon the same trusts as those for which it had been held by her. In April, 1887, the defendant, as trustee, sold the undivided half of said land for $7,793.75. Various sums of money were from time to time received, as revenue from said undivided one half interest in said land, aggregating $5,295.42, and various disbursements for taxes and other expenses were from time to time made, aggregating $1,748.60, of which receipts and expenditures an itemized statement was presented.

By reason of the foregoing facts, the plaintiffs had become entitled to receive from the defendants one fourth of the profits realized by the sale of or by the revenue arising from the

Arguments.

said undivided one half part of said land, the defendant alleging that it was entitled to claim six per cent interest upon the purchase money, $4,500, since February 19, 1856, and the plaintiffs alleging that the agreement of that date contemplated no allowance of interest thereon.

—The case stated presented to the court three methods of calculating the profits, the first computing interest upon all debits and credits, including the $4,500; the second allowing no interest upon either side of the account; and the third allowing interest upon all debits and credits except the original purchase money; and it was stipulated that the court should enter judgment in favor of the plaintiffs for $138.96, if in its opinion the first were the correct method of computation; if the second method were the correct one, then in the sum $1,710.14; and in the sum of $2,281.71, if the third method were correct.

After argument the court, without opinion filed, entered judgment for the plaintiffs for $138.96, whereupon, Catharine Elliott, one of the administrators, having died, and her death having been suggested upon the record, J. Henry Hentz, surviving administrator, took this appeal, specifying that the court erred:

1. In not entering judgment for the plaintiffs for $2,281.71.

*Mr. David W. Sellers* (with him *Mr. John A. Clark*), for the appellant:

1. Under the agreement, the profit or loss upon the sale of the land was to be paid to or by Hentz in the proportion of one fourth. The difference between its cost, $4,500, and what it sold for, was profit, and of this Hentz was entitled to one fourth as soon as realized. The revenue arising from the land, while it remained unsold, is treated separately in the agreement, and is the subject of a separate account. The net income is the fund upon which the right to profit accrues, so far as the revenue is concerned, and, as an accountant would run interest on debits and credits to ascertain net income, the third method of calculation submitted to the court is accurate.

2. The time of sale, under the agreement, was within the discretion of Van Syckel. In delaying the exercise of his power, however, he could not inflict any punishment on Hentz.

Opinion of the Court.

Yet that is just what the allowance of interest on the original purchase money would be, in this case : Second St. etc. Pass. Ry. Co. v. Philadelphia, 51 Pa. 465. Interest is in the nature of compensation allowed for an unlawful detention of payment : Kelsey v. Murphy, 30 Pa. 341. But Hentz would not owe Van Syckel anything until the sale was made, nor would Van Syckel owe Hentz. There was therefore no detention of payment.

*Mr. John G. Johnson,* for the appellee :

1. Hentz has no right to be credited with interest upon the receipts, until they amount to enough to reimburse the outlays. In any case, Van Syckel was entitled to appropriate the receipts, as they came in, to repaying what he had expended. Until the sale in April, 1887, the receipts were insufficient to reimburse him, and no interest account ran in Hentz's favor.

2. Profits cannot be ascertained without a calculation of interest. Would a person who, in 1856 invested $4,500 in the purchase of a lot, and in 1887 sold it for $4,600, realize a profit ? Is there any person who would say that he had done so? There was no profit, in this case, till principal and interest had been reimbursed ; and there is no pretence that Van Syckel unduly delayed the sale.

OPINION, MR. JUSTICE MCCOLLUM :

The obligation of Van Syckel, under and by virtue of the agreement of February 19, 1856, was to pay over to Hentz one fourth of the profits which he might realize by the sale of or by the revenue arising from his undivided one half of the land therein described. "Profits," says Mr. Lindley in his work on Partnership, page 8, "are the excess of returns over advances ; the excess of what is obtained over the cost of obtaining it ; " and "profits and net profits are, for all legal purposes, synonymous expressions." It was not the intention of the parties to this agreement that Hentz should become the owner of one fourth of the undivided one half which Van Syckel held, but that he should acquire the right to demand and receive one fourth of the profits which Van Syckel might realize from the use and sale of the land. What, then, were the profits thus realized by Van Syckel, or by his estate? The land was bought

Opinion of the Court.

in 1856 for $4,500 and sold more than 30 years afterwards for
$7,793.75. The interest on the price paid for it in 1856 ex-
ceeded the sum for which it was sold in 1887. If no income
had been derived from the land during this period, the owner
would have sustained a loss on the sale of it greater than the
amount originally expended in its purchase. There are no
profits in a land speculation which does not return to the in-
vestor his purchase money with interest upon it. In estimat-
ing the cost of unproductive land to a purchaser who held it for
thirty years, we must include interest on the price he paid for
it; and, if the sum for which he sells it does not exceed the
purchase money and interest thereon, he does not realize a profit
on the investment. In this case, it is conceded that, in ascer-
taining the profits derived from the use of the land, interest on
advances made after the agreement of February 19, 1856, should
be computed, but it is contended that the difference between
the price paid for the land in 1856 and the sum received for it
in 1887 represents profits arising from the purchase and sale of
it. We cannot so construe the agreement under which the ap-
pellant claims. It was one fourth of the profits which Van
Syckel should realize on his investment, that he agreed to pay
over to Hentz. There was no separation of profits realized by
a sale of the land from profits arising from its use. The ap-
pellant is entitled to one fourth of the profits realized by Van
Syckel and his estate, by the use and sale of this land, and for
it he obtained judgment in the court below. With this he
ought to and must be content.

Judgment affirmed.