## COMMISSIONER OF INTERNAL REVENUE v. F. J. YOUNG CORPORATION.
## SAME v. L. D. PIERSON CORPORATION.
### Nos. 6714, 6715.

Circuit Court of Appeals, Third Circuit.
March 27, 1939.

---

[3] Merchants' Loan & Trust Co. v. Egan, 222 Ill. 494, 502, 78 N.E. 800.
[4] Moore v. Wright, 90 Ill. 470.

[5] Olson v. Brundage, 139 Ill.App. 559, 562.

A. F. Prescott, Jr., of Washington, D. C., for petitioner.

Leland T. Atherton, of New York City, for respondents.

Before DAVIS, MARIS, and BUF-FINGTON, Circuit Judges.

DAVIS, Circuit Judge.

The commissioner determined deficiencies of $30,314.59 and $30,674.59 against the respondents, F. J. Young Corporation and L. D. Pierson Corporation, respectively, in their income tax returns for the year 1930. Each respondent thereupon filed a petition with the Board of Tax Appeals for the redetermination of its income tax for that year. The cases were consolidated for hearing and were disposed of in a single opinion (35 B.T.A. 860) in which the Board held that there was no deficiency in either case. The commissioner thereupon appealed to this court.

The question involved is whether or not a "gain" which resulted from a tax free exchange of securities under section 112 (b) (5) of the Revenue Act of 1928, 26 U.S.C.A. § 112(b)(5),[1] can be considered as "earnings or profits" out of which a "dividend" within the meaning of section 115 (a) of the Act, 26 U.S.C.A. § 115(a),[2] may be declared.

In 1929, Yeager, Young and Pierson, Inc., hereinafter called Yeager, a corporation which dealt in investment securities and engaged in the general banking business, transferred to another corporation certain of its securities which, it was stipulated,

cost, or had a cost basis of $36,000, in exchange for 87,000 shares of stock of the Empire Corporation which had a market value of $957,000. It is conceded by all of the parties that the profit of $921,000 was a gain which was not "recognized" or taxable under section 112 (b) (5) of the Act.

In 1930, Yeager distributed some of the Empire stock so acquired, as well as certain other securities which it owned, to its stockholders. This distribution did not reduce its authorized capital but was made, to a large extent out of the "unrecognized" gain realized on the tax free exchange.

The respondents each owned an equal number of shares of stock in Yeager (which had a cost basis to them of $8,060) and each received an equal number of shares in the distribution of its securities. The market value of the securities received by each respondent totalled $221,768.74, of which $190,610 represented the value of the Empire stock which Yeager had acquired in the tax free exchange in 1929.

Each respondent reported the receipt of these securities in its income tax return for 1930, but each also claimed a deduction in equal amount under the provisions of section 23 (p) (1) of the Act, 26 U.S.C.A. § 23 note, which permits a corporation to take deductions of "the amount received as dividends * * * from a domestic corporation".

The commissioner, however, disallowed the deductions, and assessed the deficiencies mentioned above.

The validity of the commissioner's action depends upon the interpretation to be given the words "earnings or profits", for a dividend is defined as "any distribution made by a corporation to its shareholders, whether in money or in other property, out of its *earnings or profits.*" Sec. 115 (a).

The commissioner contends that gains which are not "recognized" under section 112 (b) of the act can not be considered as "earnings or profits" under section 115

---

[1] "(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

[2] "(a) Definition of dividend. The term 'dividend' when used in this title [chapter] (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913."

(a); that therefore the distribution of securities by Yeager was not out of its "earnings or profits"; that this distribution was therefore not a "dividend" deductible under section 23 (p) (1), but that it was a distribution cognizable under section 115 (d) [3]; that the amount of such distribution to the extent that it was not out of "earnings or profits", should have been "applied against" the cost basis of the respondent's stock in Yeager ($8060), and that "if in excess of such basis" such excess was taxable "in the same manner as a gain from the sale or exchange of property". Section 115 (d) of the Act.

The infirmity in the commissioner's reasoning lies in the falsity of his major premise, namely, that a gain which is not "recognized" under section 112 (b) (5) may not be considered as "earnings or profits" under section 115 (a).

It can not be doubted that a corporation which has acquired certain property for $36,000, and later trades or exchanges it for other property worth $957,000, has made a profit within the ordinary sense of the term, for a profit is generally understood as "the excess of what is obtained over the cost of obtaining it." 50 C.J. 644; Hentz v. Pennsylvania Company for Insurance on Lives, etc., 134 Pa. 343, 19 A. 685. Therefore, as a result of the exchange of securities mentioned above, Yeager realized a definite "gain" or "profit" and the fact that the revenue act failed to "recognize" that as a taxable "gain" could not alter the situation.

The very wording of section 112 (b) indicates that Congress was aware of the distinction between net income and *taxable* net income for the provision that certain "gains" or "profits" should not be "recognized" in computing taxable income, shows that Congress realized that as commonly understood they were nevertheless "gains" and "profits".

Section 115 (a) is simply a definition of the word "dividend" and merely distinguishes between a distribution out of "earnings and profits" and a distribution out of capital. The words "earnings or profits", as therein used, are words in common use, and "are to be given their natural, plain, ordinary, and commonly understood meaning." 59 C.J. p. 975, section 577; Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265; DeGanay v. Lederer, 250 U.S. 376, 39 S.Ct. 524, 63 L.Ed. 1042; Lake County v. Rollins, 130 U.S. 662, 9 S.Ct. 651, 32 L.Ed. 1060. If Congress had intended to limit the meaning of the word "dividend" to a distribution out of "recognized" gains or out of taxable income, it would expressly have indicated that fact.

It may be that the steps taken by the taxpayers in this case were for the purpose of avoiding taxes, but they brought their actions within the four corners of the Act.

It seems clear that the distribution made by Yeager was a "dividend" out of its "earnings or profits" and was deductible under section 23 (p) (1) of the Act.

The orders of redetermination of the Board are affirmed.

---

[3] "(d) Other distributions from capital. If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this subsection shall also apply to distributions from depletion reserves based on the discovery value of mines." 26 U.S.C.A. § 115 note.