## COMMISSIONER OF INTERNAL REVENUE v. FISHER et al.

### No. 9858.

Circuit Court of Appeals, Sixth Circuit.

March 26, 1945.

As Amended on Rehearing June 25, 1945.

Writ of Certiorari Granted Nov. 5, 1945.

See 66 S.Ct. 145.

Hilbert P. Zarky, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Robert N. Anderson, and Hilbert P. Zarky, all of Washington, D. C., on the brief), for petitioner.

R. M. O'Hara, of Detroit, Mich. (Benjamin E. Jaffe and R. M. O'Hara, both of Detroit, Mich., on the brief), for respondents.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented in this case is whether the taxpayer received in 1934 a taxable dividend paid out of earnings and profits of the Senior Investment Corporation. The Commissioner determined a deficiency of $1,231,636.92, based primarily upon a distribution by the Senior Investment Corporation in 1934 of 43,400 shares of common stock of General Motors Corporation. The Tax Court held that the Senior Investment Corporation had a large operating deficit on the date of the distribution of the shares, and that no taxable dividend was received.

The material facts as stipulated and found by the Tax Court are as follows:

The tax return involved was made for 1934 as a joint return by Fred J. Fisher

and his wife, Burtha M. Fisher, residents of Detroit, Michigan. In January, 1934, Fisher owned all of the outstanding Class A shares of the Senior Investment Corporation, 71,573 in number. The cost to him of these shares was not less than $1,723,-881.25. On January 31, 1934, without surrendering any of the Class A shares Fisher received as a distribution on the stock 43,-300 shares of General Motors common stock having a value of $1,723,881.25. The Senior Investment Corporation was incorporated July 29, 1929, with 300,000 shares of no par value stock, consisting of 100,-000 shares each of Class A, B and C stock. Immediately following the incorporation the Fishers transferred certain assets, particularly securities, to the Senior Investment Corporation. The cost to the Fishers and the July 29, 1929, fair market value of the assets transferred and the number of shares issued to them therefor by the Senior Investment Corporation are shown in the following table:

| | Cost | JULY 29, 1929 FAIR MARKET VALUE | NUMBER OF SENIOR SHARES ISSUED |
|---|---|---|---|
| Fred J. Fisher...... | $12,947,242.88 | $42,943,427.76 | 71,573 Class A |
| | | | 79,805 Class C |
| Burtha M. Fisher... | 894,060.02 | 40,000,000.00 | 100,000 Class B |
| | 699,350.00 | 5,486,250.00 | 9,143 Class A |
| | | | 10,195 Class C |

The remaining 10,000 Class C shares were issued to an employee for no consideration. On December 9, 1931, the Senior Investment Corporation retired the 9,143 Class A shares held by Burtha M. Fisher.

In computing its gain or loss from the sale or other disposition of the assets received for its shares on incorporation the Senior Investment Corporation used as a basis the fair market value of such assets on the date received. As a result the corporation had a large operating deficit on January 31, 1934, when the General Motors Corporation shares were distributed to Fisher. The Commissioner used the trans-

ferors' costs as a basis, and thus computed, the books of the corporation showed a surplus in excess of $1,723,881.25 available for distribution of dividends. Since Fisher did not receive a taxable dividend unless the Senior Investment Corporation had a surplus available for distribution of dividends, the case turns upon the question whether the corporation, in computing its gain or loss on the sale of the assets acquired by it from the Fishers in exchange for its own stock, should have used as a basis the fair market value of the assets at the time of the exchange, or the transferors' cost. The Tax Court, relying upon decisions of its own and of other courts [Cf. Commissioner of Internal Revenue, v. W. S. Farish & Co., 5 Cir., 104 F.2d 833; Commissioner of Internal Revenue v. F. J. Young Corporation, 3 Cir., 103 F.2d 137], held that the basis used by the Senior Investment Corporation was correct and declined to sustain the deficiency.

The Commissioner contends that when a corporation acquires assets in a transaction where the transferors' gain or loss is not recognized for tax purposes, the corporation's earnings and profits for dividend purposes are determined in the same manner as its taxable gains. The transactions between the Fishers and the Senior Investment Corporation were tax free within § 112 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 692.

The statute which governs this situation was first enacted in 1940 and its material portions are printed in the margin.[1] This section in effect provides that corporate earnings and profits on the sale

---

[1] Second Revenue Act of 1940, c. 757, 54 Stat. 1004, 26 U.S.C.A.Int.Rev.Acts.
"Sec. 501. Earnings and Profits of Corporations
"(a) Under Internal Revenue Code.—Section 115 of the Internal Revenue Code is amended by inserting at the end thereof the following new subsections:
"'(l) Effect on Earnings and Profits of Gain or Loss and of Receipt of Tax-Free Distributions.—The gain or loss realized from the sale or other disposition (after February 28, 1913) of property by a corporation—
"'(1) for the purpose of the computation of earnings and profits of the corporation, shall be determined, except as provided in paragraph (2), by using· as the adjusted basis the adjusted basis (under the law applicable to the year

of assets of the corporation are to be computed in the year when recognized in the same manner as taxable gains are calculated. But the statute also provides that the amendments made by the section shall not affect the tax liability of any transferor for any year which on September 20, 1940, was pending before or was theretofore determined by the Board of Tax Appeals or any court of the United States. The petition in this case was filed September 6, 1940, and therefore the proceeding is not governed by the amendments of 1940.

In this respect the case is sharply differentiated from Commissioner v. Wheeler et al., 65 S.Ct. 799, which held valid and applicable Treasury Regulations 101, Art. 115—3, embodying the provisions of the 1940 amendment as to the determination of earnings and profits of a corporation for dividend purposes. Relying upon the cited case, the Commissioner contends that Regulations 86, Art. 115—1, a predecessor of Art. 115—3, requires reversal of the decision of the Tax Court. We think that Art. 115—1 does not govern here, for Treasury Decision No. 5024, 1940—2, Cum.Bull. 110, declares that while the rules stated in the regulations are applicable to cases which were pending before the Board of Tax Appeals on September 20, 1940, the limitation of Sec. 501 (c) affects the tax liability for the specific year or years actually so pending on or de-termined prior to September 20, 1940. This decision applies the saving clause of Sec. 501(c) to cases governed by Art. 115—1. As a contemporaneous interpretation of the meaning of the regulations by those who are appointed to carry out its provisions, Treasury Decision No. 5024 has great weight and is entitled to respect. Augustus v. Commissioner, 6 Cir., 118 F.2d 38, certiorari denied 313 U.S. 585, 61 S.Ct. 1095, 85 L. Ed. 1540. Cf. Bowles, Adm'r, v. Seminole Rock & Sand Co., 65 S.Ct. 1215.

In view of the fact that the transaction involved took place on January 31, 1934, and Art. 115—1 was promulgated on February 11, 1935, Treasury Decision No. 5024 may be viewed as a limitation on the retroactive effect of art. 115-1. Since the decision was made by the Commissioner with the approval of the Secretary of the Treasury, this limitation upon the retroactivity of the regulations has a double congressional sanction, one arising from the saving clause in Sec. 501(c), 26 U.S.C.A. Int.Rev.Acts, the other from the specific authority granted the Commissioner with approval of the Secretary, under Sec. 3791(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3791(b), to limit the retroactive effect of any ruling, regulation or treasury decision relating to the internal revenue laws in precisely this way.

The decision of the Tax Court is affirmed.

---

in which the sale or other disposition was made), for determining gain, except that no regard shall be had to the value of the property as of March 1, 1913; but

"'(2) for the purpose of the computation of earnings and profits of the corporation for any period beginning after February 28, 1913, shall be determined by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain. Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was made. Where in determining the adjusted basis used in computing such realized gain or loss the adjustment to the basis differs from the adjustment proper for the purpose of determining earnings or profits, then the latter adjustment shall be used in determining the increase or decrease above provided. * * *'

"(b) Effective Date of Amendment.— The amendment made by subsection (a) shall be applicable to taxable years beginning after December 31, 1938.

"(c) Under Prior Acts.—For the purposes of the Revenue Act of 1938 or any prior Revenue Act the amendments made to the Internal Revenue Code by subsection (a) of this section shall be effective as if they were a part of each such Revenue Act on the date of its enactment. Nothing in this subsection shall affect the tax liability of any taxpayer for any year which, on September 20, 1940, was pending before, or was theretofore determined by, the Board of Tax Appeals, or any court of the United States."