**BANGOR & AROOSTOOK R. CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 4577.**

United States Court of Appeals First Circuit.

Dec. 31, 1951.

Joseph M. Jones, Washington, D. C. (Gordon D. Briggs, Henry J. Hart, Bangor, Me., and Dudley, Algire, Jones & Ostmann, Washington, D. C., on brief), for petitioner.

Irving I. Axelrad, Special Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and Lee A. Jackson, Special Assts. to the Atty. Gen., on brief), for respondent.

Sidney S. Alderman and Charles M. Davison, Jr., Washington, D. C., amici curiae, for Southern Ry. Co.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Bangor and Aroostook Railroad Company petitions for review of a decision of the Tax Court of the United States determining that there is a deficiency in petitioner's excess profits tax in the sum of $3,677.-45 for the calendar year 1943.

The applicable statute is the Excess Profits Tax Act of 1940, 54 Stat. 975; Internal Revenue Code § 710 et seq., 26 U.S.C.A. § 710 et seq. Speaking generally, the "excess profits credit" is the statutory measure of normal profits exempt from the excess profits tax; the credit is deducted from the "excess profits net income" to obtain the "adjusted excess profits net income" upon which the tax is laid. The excess profits credit could be computed in either of two ways, by the average earnings method, I.R.C. § 713, or by the invested capital method, I.R.C. § 714. Petitioner elected the latter method, under which eight per cent of its "invested capital" became its excess profits credit. One component entering into the calculation of the "invested capital" was the "accumulated earnings and profits as of the beginning of such taxable year" I.R.C. § 718(a) (4).

In 1942 petitioner purchased in the open market for retirement and cancellation certain of its bonds of an aggregate par value of $634,000. The total purchase price was $497,553.30; and the difference between these two sums, or $136,446.70, is referred to hereinafter as petitioner's "bond profit" for the calendar year 1942. It is undisputed that this bond profit was realized income within the general definition of I.R.C. § 22(a), 26 U.S.C.A. § 22(a). United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131; Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477. Petitioner would have been taxable upon the whole amount of the bond profit in 1942, except for the fact that it elected to take advantage of the option provided under I.R.C. § 22(b) (9) and § 113(b) (3), 26 U.S.C.A. §§ 22(b) (9), 113(b) (3), and thus was permitted to exclude the bond profit from the computation of its normal tax net income and surtax net income in its return for 1942.

Notwithstanding this treatment of the bond profit in its 1942 return, petitioner sought to diminish its excess profits tax for the calendar year 1943 by including $136,-446.70, or the whole amount of the so-called bond profit, in the item "accumulated earnings and profits" as of January 1, 1943. Such inclusion enhanced the figure for petitioner's "invested capital" and its "excess

profits credit", with a resultant reduction in petitioner's excess profits tax for 1943. The Tax Court ruled that the bond profit, not having been "recognized" though "realized" in 1942, should be excluded from "accumulated earnings and profits" as of January 1, 1943. This exclusion produced the deficiency found in the decision now under review.

We think the ruling of the Tax Court was correct. In view of the full and careful opinion by Judge Raum, concurred in without dissent by the whole court, our own discussion will be briefer than otherwise might have been appropriate.

It is important to observe the distinction between (1) income which is exempt from tax and (2) income which, though "realized" in a constitutional sense and thus within the power of Congress to tax, is not at the outset "recognized", the incidence of the tax being merely postponed.

As to (1), exempt income, such for instance as interest on tax-free bonds, if income of this sort is to be taken into "earnings or profits", the only logical time to do so is when the income is realized. It is so provided by regulation. Section 29.115–3 of Reg. 111, relating to the provisions of I.R.C. § 115, 26 U.S.C.A. § 115, on the subject of corporate dividends out of "earnings or profits", states that among the items "entering into the computation of corporate earnings or profits for a particular period are all income exempted by statute, income not taxable by the Federal Government under the Constitution, as well as all items includible in gross income under section 22(a) or corresponding provisions of prior Revenue Acts * * *. Interest on State bonds and certain other obligations, although not taxable when received by a corporation, is taxable to the same extent as other dividends when distributed to shareholders in the form of dividends."

It is not in express terms provided that tax-exempt income, when realized, is also taken into "accumulated earnings and profits" under I.R.C. § 718(a) (4). That term is not defined in the Code. But § 35.718–2 of Reg. 112 refers back to § 115 of the Code and the regulations prescribed thereunder, and states that in general "the concept of 'accumulated earnings and profits' for the purpose of the excess profits tax is the same as for the purpose of the income tax. * * *" See also I.R.C. § 728. The clear inference from the regulations that truly exempted income may be carried into "accumulated earnings and profits", is evidently in accordance with the congressional purpose. In prescribing the invested capital method as an alternative way of computing the taxpayer's "excess profits credit", it appears that "by this method Congress intended, with minor exceptions not here relevant, to impose the excess profits tax on all annual net income in excess of 8% of a corporation's working capital, including its accumulated profits." Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 497, 68 S.Ct. 695, 697, 92 L.Ed. 831. If therefore a corporation receives during a given year income which is exempt from taxation, such as interest on tax-free bonds, and such income is left in the business to be available as working capital, it is reasonable and proper that such income, though not taxable to the corporation receiving it, should be included in the item "accumulated earnings and profits" as of the beginning of the following year, § 718(a) (4) of the Code, in the computation of the corporation's excess profits tax for that year.

But as to (2), income which, though "realized", is not at the outset "recognized", the problem is quite different. This concept in perhaps its most familiar instances appears in § 112(b) of the Internal Revenue Code, 26 U.S.C.A. § 112(b), and corresponding provisions of earlier Revenue Acts. The thought behind the nonrecognition provisions of § 112(b) is that, in certain transactions involving "the sale or exchange of property", though a gain may have been realized in a constitutional sense, it is unfair or inappropriate to tax the gain at the outset in view of the fact that in a popular and economic sense there has been a mere change in the form of ownership and the taxpayer has not yet really "cashed in" on the more or less theoretical gain. As expressed by the Supreme Court in Commissioner of Internal Revenue v. Wheeler, 1945, 324 U.S. 542, 546, 65 S.Ct. 799, 802, 89

L.Ed 1166: "Congress has determined that in certain types of transaction the economic changes are not definitive enough to be given tax consequences, and has clearly provided that gains and losses on such transactions shall not be recognized for income-tax liability but shall be taken account of later. §§ 112, 113, *It is sensible to carry through the theory in determining the tax effect of such transactions on earnings and profits.*" [Italics added.]

In Commissioner of Internal Revenue v. F. J. Young Corp., 1939, 103 F.2d 137, the third circuit had held that a gain which resulted from a tax-free exchange of securities under § 112(b) (5) of the Revenue Act of 1928 must be considered "earnings or profits" out of which a "dividend" might be declared within the meaning of § 115(a) of the Act. But the court ignored or overlooked a provision of Art. 115–3 of Reg. 94, promulgated under the Revenue Act of 1936, which explicitly stated: "Gains and losses within the purview of section 112 *or corresponding provisions of prior Acts* are brought into the earnings and profits at the time and to the extent such gains and losses are recognized under that section." [Italics added.] This regulatory provision was carried forward into Art. 115–3 of Reg. 101, under the Revenue Act of 1938, and into § 19.115–3 of Reg. 103 and § 29.115–3 of Reg. 111 under the Internal Revenue Code. In Commissioner of Internal Revenue v. Wheeler, 1945, 324 U.S. 542, 65 S.Ct. 799, supra, the Supreme Court expressly upheld the regulation as a reasonable and valid exercise of the rule-making power. It follows that Commissioner of Internal Revenue v. F. J. Young Corp., supra, and cases like it, cannot be taken as authorities in support of the position urged by the taxpayer in the case at bar.

Congress itself has indicated approval of the foregoing regulation by writing it expressly into the law. Section 501 of the Second Revenue Act of 1940, 54 Stat. 1004, added a new subsection (*l*) to § 115 I.R.C. in which it was provided: "Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was made." This evidently was regarded as not a change in existing law but only in the nature of a clarifying amendment. The House committee stated that the provision of the new § 115(*l*) merely enacted the rule which had been applied by the Treasury under existing law. It was pointed out that while taxpayers generally had concurred in the Treasury rule, the Board of Tax Appeals and some court decisions, mentioning specifically Commissioner of Internal Revenue v. F. J. Young Corp., 3 Cir., 103 F.2d 137, had followed the contrary theory "that gain or loss, even though not recognized in computing net income, nevertheless affects earnings and profits." The report further stated: "The purpose of this amendment is to clarify the law with respect to what constitutes earnings and profits of a corporation. This is important not only for the purpose of determining whether distributions are taxable dividends but also in determining equity invested capital for excess-profits-tax purposes." H. R. Rep. No. 2894, 76th Cong., 3d Sess., p. 41.

It is true enough that the result reached here by the Tax Court is not directly commanded by § 115 (*l*) of the Code, for that subsection by its terms deals with the delayed recognition of gain or loss realized from the "sale of other disposition of property by a corporation", whereas the non-recognized gain in the present case resulted from the taxpayer's reacquisition of its own bonds. But it does not follow that the underlined principle exemplified by the specific instances covered by the literal language of § 115 (*l*) should not be applied in other analogous nonrecognition situations. As above pointed out, Art. 115–3 of Reg. 94 was issued under the Revenue Act of 1936 without benefit of a specific statutory rule, prior to the enactment of § 115(*l*), and was upheld in Commissioner of Internal Revenue v. Wheeler, 1945, 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166.

Congress sought in § 115(*l*) to "clarify" the law in particular instances where the law had been muddied by court decisions like Commissioner of Internal Revenue v.

F. J. Young Corp., 3 Cir., 1939, 103 F.2d 137. But when § 115(*l*) was enacted, there had been no similar court decisions dealing with the effect on earnings and profits of gains from the discharge of indebtedness realized but not at the same time recognized; so that particular problem did not receive the attention of Congress when § 115(*l*) was in process of enactment. The Tax Court properly observed in the case at bar: "Surely, by taking pains to make certain that unrecognized gains or losses from sales or other dispositions of property would not be reflected in earnings and profits, Congress could not have intended thereby to produce a different result with respect to other unrecognized gains or losses, merely by failing to mention them."

The underlying principle, of which § 115 (*l*) is but an illustration, is that "earnings and profits" must be computed on the same basis as that employed in computing income subject to the income tax; in other words, that gains ought to be reflected in earnings and profits at the time they are "recognized" and taken into account for income tax purposes. See Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831. That case held that a corporate taxpayer which filed its income and excess profits tax return on the accrual basis, but elected to report income from certain installment sales on the installment basis as authorized by § 44 of the Code, 26 U.S. C.A. § 44, may not, in computing its excess profits tax credit, include in the "accumulated earnings and profits" component of its "invested capital" the unreported profits from such installment sales. The Court pointed out, 333 U.S. at page 505, 68 S.Ct. at page 701: "The congressional reports on § 115 (*l*) do not provide support for the idea that gains not included in taxable income under the taxpayer's method of accounting may nevertheless be considered 'realized' and 'recognized' for computing tax adjustments or deductions so long as they might have entered into such computations under a different method of accounting."

We think it clear that an analogous situation is presented in the case at bar.

The taxpayer having technically realized its so-called bond profit in 1942, elected under an optional method of accounting permitted by the statute to postpone recognition of such gain and to exclude the amount thereof from its gross income reported for 1942. It cannot then shift its method of accounting, and treat that gain as both realized and recognized in 1942, for the purpose of enhancing a deduction (the excess profits credit) used in the computation of its excess profits tax liability for 1943.

The rule in United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L. Ed. 131, has been criticized both on theoretical and practical grounds, and doubtless in many cases it worked a hardship. Congress took account of these criticisms in 1939, when it amended the Internal Revenue Code by adding a new paragraph (9) to § 22(b), and a corresponding new paragraph (3) to § 113(b). 53 Stat. 875. As originally enacted, § 22(b) (9) applied only to corporations "in an unsound financial condition". In 1942 the provision was amended to read as follows, 56 Stat. 811:

"§ 22. Gross income.

\*     \*     \*     \*     \*     \*

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\*     \*     \*     \*     \*     \*

"(9) Income from discharge of indebtedness. In the case of a corporation, the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113(b) (3) then in effect. \*  \*  \*"

The corresponding § 113(b) (3) provides that where an amount is excluded from gross income under § 22(b) (9) on account of the discharge of indebtedness, the whole or a part of the amount so excluded from gross income shall be applied in reduction

of the basis of any property held by the corporation in accordance with regulations prescribed by the Commissioner.

It may be noted that § 22(b) contains the statement that the "following items shall not be included in gross income and shall be exempt from taxation under this chapter". Most of the paragraphs under § 22 (b) relate to items of income which are truly "exempt" from taxation. Paragraph (9), as a matter of artistic draftsmanship, is perhaps misplaced in § 22(b), for income realized from the discharge of indebtedness is not "exempt" from taxation, but recognition of such gain is merely postponed, and the gain will be reflected in income at a later time. There is no doubt about this, as the Supreme Court clearly pointed out in Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 44–46, 69 S.Ct. 358, 367, 93 L.Ed. 477: "Furthermore, the exclusion under § 22(b) (9), as distinguished from other exclusions under § 22(b), is available only upon the express condition that the taxpayer makes and files at the time of filing the return its consent to the Regulations prescribed under § 113(b) (3) then in effect. That Section and such Regulations require that, where any amount is excluded by a corporation from its gross income under § 22(b) (9) on account of its discharge of its own indebtedness, the whole or a part of such amount shall be applied to the reduction of the basis of property held by the taxpayer during any portion of the taxable year in which such discharge occurs. The amount to be so applied and the properties to which the reduction shall be allocated are to be determined by Regulations approved by the Secretary of the Treasury. This means that such a gain, instead of being completely excluded as exempt from taxation, is postponed, for income tax purposes, until a later date when the property is disposed of in a way which will permit another form of ascertainment of the taxpayer's gain or loss in its disposition."

It appears, then, that when the provision of § 22(b) (9) for delayed recognition of gain is compared with the § 112 delayed recognition situations, the two sections stem from a common legislative conviction that it is fairer not to impose the income tax forthwith upon the theoretical gains realized from certain transactions, but to postpone the recognition of the gain, and the incidence of the tax, until the occurrence of an economically more significant event.

We have not yet stated that when the taxpayer filed the form in which it elected to exclude the bond profit from gross income in 1942 in accordance with § 22(b) (9), and thereby consented to have the basis of its property reduced in accordance with the Commissioner's regulations under § 113(b) (3), the taxpayer did not itself reduce the basis of any of its property either on its books or in its tax return, depreciation being claimed on the unreduced basis in its 1942 return. The Commissioner, in auditing the taxpayer's 1942 return, reduced the basis of its depreciable property pursuant to the applicable regulations under § 113 (b) (3). As a result, the taxpayer's depreciation deduction for 1942 was reduced in the amount of $1,736.69. This adjustment correspondingly increased the taxpayer's taxable income for 1942. Such increased income in the sum of $1,736.69 was therefore added by the Commissioner to the taxpayer's "accumulated earnings and profits" as of January 1, 1943, for the purpose of computing the taxpayer's excess profits credit in determining the excess profits tax for 1943. The Commissioner and the Tax Court agree that, to that extent, the bond profit having been reflected in 1942 income should be reflected also in the item of accumulated earnings and profits as of January 1, 1943. The taxpayer's basis having been reduced, by command of the statute, depreciation to be taken by the taxpayer for income tax purposes in the succeeding years will necessarily be lower, and taxable gains correspondingly higher; and as the bond profit is thus gradually recognized and reflected in income, it will at the same time be reflected in earnings and profits. If and when the taxpayer sells the property the basis of which has thus been reduced, the whole of the bond profit will have been recognized and reflected both in income and in earnings and profits. § 115(l). Such treatment of the bond profit seems to be clearly required by the statute and the ap-

plicable regulations. It would necessarily follow that the Tax Court properly rejected the taxpayer's contention that the whole amount of the bond profit should be taken into "accumulated earnings and profits" as of January 1, 1943; for otherwise, the bond profit would be doing double duty in reducing taxpayer's excess profits tax liability for 1943 and subsequent years. Accord, 1 Mertens, Law of Federal Income Taxation § 9.37 (Supp. 1951).

Taxpayer suggests that including the bond profit in earnings and profits a second time could be avoided by computing the annual depreciation and the profit upon ultimate sale for excess-profits-tax purposes on the unreduced basis of the assets, using the reduced basis contemplated by § 113(b) (3) only for income-tax purposes. However, resort to a different method of accounting when computing "accumulated earnings and profits" under § 718 (a) (4) from that used in determining taxable income was disapproved in Commissioner of Internal Revenue v. South Texas Lumber Co., supra.

The decision of the Tax Court is affirmed.

Kerner, Circuit Judge, dissented.