**KENTUCKY & INDIANA TERMINAL RAILROAD COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 3966.

United States District Court
W. D. Kentucky,
at Louisville.

July 30, 1962.

Louis Seelbach, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, Ky., for plaintiff.

Robert F. Sama, Atty., U. S. Dept. of Justice, Washington, D. C., Wm. E. Scent, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

This action was filed April 26, 1960, by the Kentucky & Indiana Terminal Railroad Company, a Kentucky corporation hereinafter referred to as K & I, against the United States of America to recover $55,958.79, the aggregate of an alleged deficiency in income tax for the year 1951 of $39,427.87 and interest on same in the amount of $16,530.92.

### FINDINGS OF FACT

As admitted in the pleadings, disclosed in answers to interrogatories, and stipulated in writing, the facts are not in dispute. A statement of the findings of fact from the record sufficient for the purpose of this memorandum is:

In 1911, the K & I sold an issue of bonds secured by mortgage on its properties. The bonds were made payable in British pounds sterling January 1, 1961, and sold for British pounds sterling. At the time the bonds were sold, the K & I received $4.8666 for each pound of the sales price and the indebtedness evidenced by the bonds was set up on the books of the K & I in United States dollars.

In 1949, the pound sterling had declined in value to $2.80. While the pound sterling was so devalued and in the year 1951, the K & I purchased and retired 438 of the bonds with a total par value

of 43,800 pounds. The K & I made a profit of $105,623.42 in this transaction.

On its federal income tax return for the year 1951, filed at Louisville, Kentucky, on March 17, 1952, the above amount of profit was not included as gross income by the K & I. On the same date and on United States Treasury Form 982, promulgated by the Commissioner of Internal Revenue, the K & I filed its consent that the amount of its bond profit should be applied to the reduction of the basis of its property as provided by Section 113(b) (3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 113(b) (3).

Section 22(a) of the 1939 Revenue Code, 26 U.S.C.A. § 22(a) defined gross income as:

"'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

Section 22(b) of said Code set forth the items to be excluded from gross income and exempt from taxation as such. Section 22(b) (9) provided:

"Income from discharge of indebtedness.—In the case of a corporation, the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if the taxpayer, at such time and in such manner as the Secretary by regulations prescribes, makes and files its consent to the regulations prescribed under section 113(b) (3) then in effect. In such case the amount of any income of the taxpayer attributable to any unamortized premium (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be included in gross income and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction. As used in this paragraph the term "security" means any bond, debenture, note, or certificate, or other evidence of indebtedness, issued by any corporation."

Section 113(b) (3) of the 1939 Revenue Code provided:

"Discharge of indebtedness.— Where in the case of a corporation any amount is excluded from gross income under section 22(b) (9) on account of the discharge of indebtedness the whole or a part of the amount so excluded from gross income shall be applied in reduction of the basis of any property held (whether before or after the time of the discharge) by the taxpayer during any portion of the taxable year in which such discharge occurred. The amount to be so applied (not in excess of the amount so excluded from gross income, reduced by the amount of any deduction disallowed under section 22(b) (9) and the particular properties to which the reduction shall be allocated, shall be determined under regulations (prescribed by the Commissioner with the approval of the Secretary) in effect at the time of the filing of the consent by the taxpayer referred to in section 22(b) (9). The reduction shall be made as of the first day of the taxable year in which the discharge occurred except in the case of property not held by the taxpayer on such first day, in which case it

shall take effect as of the time the holding of the taxpayer began."

The Commissioner determined that $20,062.93 of the $105,623.42 bond profit made by K & I in the year 1951 should be excluded from its income for that year as being a gain attributable to the discharge of its indebtedness and made a delinquency assessment upon the remainder of the bond profit. Pursuant to the Commissioner's assessment of the deficiency for the year 1951, the K & I paid additional tax in the amount of $39,427.87 and interest on same in the amount of $16,530.92 on March 20, 1959. On April 1, 1959, it filed its claim for refund, which was rejected by the Commissioner on August 3, 1959.

The contention of the K & I is that the entire gain of $105,623.42 was attributable to the discharge of its own indebtedness by the retirement of the bonds.

The Government contends that the gain, except to the extent of $20,062.93, is attributable to the devaluation of the pound sterling on a depressed market.

## CONCLUSIONS OF LAW

As held by the Supreme Court in United States v. Kirby Lumber Co., (1931) 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, a taxpayer is liable for income taxes on profit realized through the purchase of its own bonds at a price less than that received by the taxpayer for the bonds.

There is no dispute between counsel in this case but that the bond profit of $105,623.42 was income as defined by Section 22(a) of the 1939 Revenue Code. Section 22(b) (9) of said Code, however, provides that a corporation realizing income attributable to the discharge, within the taxable year, of its own indebtedness, or indebtedness for which it is liable, evidenced by a security may exclude such income from its gross income provided it files its consent under Section 113(b) (3) of the Code.

Referring to Sections 22(b) (9) and 113(b) (3) in Commissioner of Internal Revenue v. Jacobson, (1949) 336 U.S. 28, 44–47, 69 S.Ct. 358, 93 L.Ed. 477, the Supreme Court said:

"(T)he exclusion under § 22(b) (9), as distinguished from other exclusions under § 22(b), is available only upon the express condition that the taxpayer makes and files at the time of filing the return its consent to the Regulations prescribed under § 113(b) (3) then in effect. That Section and such Regulations require that, where any amount is excluded by a corporation from its gross income under § 22(b) (9) on account of its discharge of its own indebtedness, the whole or a part of such amount shall be applied to the reduction of the basis of property held by the taxpayer during any portion of the taxable year in which such discharge occurs. The amount to be so applied and the properties to which the reduction shall be allocated are to be determined by Regulations approved by the Secretary of the Treasury. This means that such a gain, instead of being completely excluded as exempt from taxation, is postponed, for income tax purposes, until a later date when the property is disposed of in a way which will permit another form of ascertainment of the taxpayer's gain or loss in the disposition. These provisions therefore demonstrate that Congress, at least since 1939, has prescribed that, in order for a corporate taxpayer to exclude from its gross income under § 22(a) certain gains attributable to the discharge within the taxable year of the taxpayer's indebtedness evidenced by bonds, the taxpayer must consent to the subsequent use of those gains in reducing the basis of property held by the taxpayer during any portion of the taxable year in which such discharge occurred. A corporate taxpayer with gains meeting these specifications but not filing the required consent would be obliged to include those gains in its gross income, unless additional facts brought them under some other exemption."

In the subsequent case of Bangor & Aroostook R. Co. v. Commissioner, (1

Cir., 1951) 193 F.2d 827, the facts were that, in 1942, the petitioner purchased in the open market its bonds of an aggregate par value of $634,000.00. Its purchase price for the bonds was $497,-553.30, a sum $136,446.70 less than the face amount of its bonds. The court held this to be "bond profit" and income within the definition of that term in Section 22(a) of the 1939 Revenue Code and income from a source similar to that defined in United States v. Kirby Lumber Co., supra, and Commissioner v. Jacobson, supra. At page 828 of its opinion, the court said:

"Petitioner would have been taxable upon the whole amount of the bond profit in 1942, except for the fact that it elected to take advantage of the option provided under I.R.C. § 22(b) (9) and § 113(b) (3), 26 U.S.C.A. §§ 22(b) (9), 113(b) (3), and thus was permitted to exclude the bond profit from the computation of its normal tax net income and surtax net income in its return for 1942."

In analyzing Section 22(b) (9) and 113 (b) (3) on page 832 of its opinion, the court said:

"It may be noted that § 22(b) contains the statement that the 'following items shall not be included in gross income and shall be exempt from taxation under this chapter'. Most of the paragraphs under § 22 (b) relate to items of income which are truly 'exempt' from taxation. Paragraph (9), as a matter of artistic draftsmanship, is perhaps misplaced in § 22(b), for income realized from the discharge of indebtedness is not 'exempt' from taxation, but recognition of such gain is merely postponed, and the gain will be reflected in income at a later time. There is no doubt about this, as the Supreme Court clearly pointed out in Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 44–46, 69 S.Ct. 358, 367, 93 L.Ed. 477."

In Denman Tire & Rubber Co. v. Commissioner, (6 Cir., 1951) 192 F.2d 261, 263, the court considered the relationship between Sections 22(b) (9) and 113(b) (3) of the 1939 Revenue Code in connection with the retirement by a corporation of indebtedness for which it was liable for substantially less than the face amount of the indebtedness, but the corporation failed to file a timely consent to a reduction in the value of its assets under Section 113(b) (3). The court said:

"We are more concerned with petitioner's contention that the two items involved should not have been included in gross income because of the provisions of Section 22(b) (9) of the Internal Revenue Code as amended. This section provides that in the case of a corporation, there shall not be included in gross income the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable, evidenced by a security, if 'at the time of such discharge the taxpayer was in an unsound financial condition, and if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113(b) (3) then in effect.' "

It was the failure of the petitioner to file timely its consent which resulted in the inclusion of the entire amount in which the taxpayer profited by the retirement of the obligations for less than their face amount in gross income.

The Commissioner's contention is that the profit made by the K & I was not attributable to the discharge of the corporation's own indebtedness but was attributable to the devaluation of the pound sterling. It is contended by the Commissioner that the depressed or lower value of the pound sterling in 1951, as compared with 1911, was a cause to which could be attributed the profit of the K & I. It is obvious that had the K & I not

purchased its bonds at the depressed value no profit would have been realized.

In the case of America-Southeast Asia Co., Inc. v. Commissioner, (1956) 26 T.C. 198, relied upon by the Commissioner, the facts were that the corporation owed to the Bank of Nova Scotia an aggregate amount in pounds sterling equivalent to $96,013.33 in United States dollars for burlap purchased in India by means of letters of credit issued by the bank. The amount of the indebtedness was shown on the books of the corporation by converting the pounds sterling to United States dollars at the then current rate of exchange of $4.04 per pound. The British pound sterling was devalued and the corporation acquired for $66,603.32 sufficient pounds sterling, at the reduced rate of exchange of $2.80¼, to liquidate its indebtedness to the bank. The Tax Court held that the resulting gain of $29,-410.01, "while measured by the difference in the value of pounds sterling at the time they were borrowed and the value when they were repaid, is a gain arising directly out of petitioner's trade or business from the settlement of a debt incurred therein for less than its face amount." The Tax Court cited United States v. Kirby Lumber Co., supra, and Church's English Shoes, Ltd. v. Commissioner, (1955) 24 T.C. 56, affirmed (2 Cir.) 229 F.2d 957.

The case of Church's English Shoes, Ltd. v. Commissioner, supra, involved a shipment of imported shoes purchased by the petitioner from an English company on credit in 1935 and sold by it at retail during the years 1936 and 1937. It was not shown that the petitioner sustained a loss on that particular shipment, but it did sustain an over-all operating loss in its business in 1936 and 1937 and each year thereafter until 1947. In 1947, the petitioner acquired sufficient money to obtain pounds sterling at a devalued price and pay the account incurred in 1935, realizing a profit of $2,063.30 through its purchase of the devalued pounds sterling. The Tax Court held that the petitioner had not invested in any foreign exchange in 1935 which might have provided the basis for any capital gain in 1947, therefore, the purchase of the pounds sterling was no more than a recurring transaction in the ordinary course of its business.

The Commissioner also cites the case of Spear Box Co. v. Commissioner, (2 Cir., 1950) 182 F.2d 844, in which the facts were that, in 1942, the taxpayer retired debentures, for which it was liable in a face amount of $148,500.00, for a total cash outlay of $101,615.00. The court affirmed the Tax Court's holding that the difference of $46,885.00 was taxable in 1942 as "income attributable to a discharge of indebtedness." The court said it was the issuing price or face value of the bonds which was determinative for the reason that the debtor owed the face amount of his debt. The exclusion was not allowed because of the taxpayer's qualification upon Form 982 to the effect that the taxpayer refused to consent to a reduction of the basis of its property as required by Section 22(b)(9). The taxpayer changed Form 982 by typing in before the word "consent" the words "does not" and by adding at the bottom of the form a request that the income excluded be treated as a credit to the good will account. The court decided that this was neither consent to a reduced basis nor an agreement upon anything in place of it. Hence, the bond profit was treated as ordinary income as in the Kirby Lumber Company case.

## CONCLUSION

It is concluded by the Court that the profit realized by the K & I in this case resulted from and was attributable to the discharge of its own indebtedness by the retirement of the bonds. The deflated value of the pound sterling would have had no effect in producing a profit or accruing a profit chargeable to the K & I had not K & I acquired the bonds and discharged the indebtedness.

A judgment is awarded to the plaintiff in accordance with the prayer of its complaint and will be submitted by counsel for plaintiff upon notice to defendant's counsel.